OPINION OF THE COURT
William R. Roy, J.
This CPLR article 78 proceeding is brought by petitioners to annul a determination of the Planning Board of the Town of Onondaga which approved a cluster development in that town, pursuant to section 281 of the Town Law.
Petitioners are owners of realty either adjoining or near to the property which is the subject of this proceeding, and their right to maintain this review is not in issue. Respondents, Buechners and Wincrest Acres II, have been permitted to intervene by order of Hon. Thomas J. Murphy, dated March 8,1983. Prior thereto and on February 14,1983, the original petition, which was returnable November 22, *1004 1982, and an application to amend the original petition, returnable January 10, 1983, were referred to the undersigned for Special Term on February 14, 1983. On that latter date it was agreed by counsel that the court could consider all papers submitted on both petitions prior to February 14, 1983.
Respondents Winifred and Stephen Buechner are the owners of 7.03 acres of undeveloped land in the Town of Onondaga. The parcel is zoned R-l residential (one family residential, 20,000 square feet minimum lot size) and is located on the easterly edge of the town adjoining a “forever wild” portion of the City of Syracuse known as the “Rand Tract”. The property is rectangular in shape and extends in an easterly direction from a proposed link between two improved sections of Webster Mile Drive, which drive, when improved, will run in a north-south direction along the westerly edge of the property in question. The property is heavily wooded with two deep ravines — one running nearly the full length of the northerly boundary of the property and one running along the south boundary and across the southwest corner of the property. These ravines are some 30 to 40 feet deep and each contains a stream of water running in an easterly direction toward the Rand Tract in the City of Syracuse. The center portion of the property slopes from the westerly boundary of the property some 16 feet to its easterly edge and forms a plateau extending from west to east between the two ravines. At the easterly line of the property there is a steep, heavily wooded slope which drops to the floor of the “Rand Tract”.
It appears from the papers that Mrs. Buechner and her son, Stephen, have for some time attempted to develop the site for residential purposes and have submitted and withdrawn at least one zone change proposal prior to making the instant application.
On May 10, 1982, respondent Sedgwick Farms Estates, Inc., submitted to respondent town planning board, a site development plan for the property under section 281 of the Town Law. The site plan included utilities, road profile, architectural plans, elevation and a narrative. The plan called for the construction of 14 one- and two-story deck *1005 and modified deck homes. Construction of these homes would be confined to substantially the center portion of the property in the plateau area and would be built on lots ranging from 15,350 to 21,600 square feet. The houses would be built in town house fashion and attached to each other in groups ranging from two to four units. They would range in price from $85,000 to $105,000 per unit, depending on size and options. In addition, the respondent Sedgwick submitted a short form environmental assessment form which indicated that the proposed project had no significant impact on the environment.
It appears that the planning board had substantial concern about the development of the property and began a study of the proposal. The matter was referred to the Onondaga County Planning Board which declined comment on the project for jurisdictional reasons. The town engineers reviewed the proposal and indicated several discrepancies between the preliminary development plan and the R-l zoning regulations for the Town of Onondaga; discrepancies between the proposal and the town subdivision regulation regarding road construction and requirements for accomplishing drainage of the parcel. The highway superintendent expressed concern about the location and type of protective guard rails at the westerly end of the project, as well as obstruction of the intersection of the new street with Webster Mile Drive. The town fire chief made recommendations regarding location of fire hydrants and construction of fire walls in the residences due to insufficient water pressure to the project.
After apparently satisfying itself as to the resolution of these and other problems, the board took the matter under advisement. The board held public hearings on the proposed project on July 12 and August 9,1982. On September 13, 1982, the planning board unanimously approved the project and filed a resolution to that effect in the town clerk’s office on September 15, 1982.
Petitioners contend that the Planning Board of the Town of Onondaga exceeded its authority and acted illegally in granting approval of the respondent Buechner’s application under section 281 of the Town Law. Petitioners claim, first, that a 1966 resolution of the Town Board of the Town *1006 of Onondaga was insufficient to grant authority to the planning board of the town to approve subdivision plats under section 281 of the Town Law; secondly, that the planning board failed to comply with ECL article 8, and lastly, that the board erred in its determination that the proposed subdivisions would not result in a greater density than is permitted under applicable zoning ordinances of the Town of Onondaga.
Turning first to the question of the validity of the 1966 resolution of the town board, this court determines that the resolution was properly made and was sufficient to convey authority to the planning board to modify the applicable provisions of the zoning ordinances under section 281 of the Town Law. Petitioners contend that the grant of authority by the town board under section 281 was overly broad in that it applied to all residential property in the town which property, according to petitioners, comprises some 98% of all town lands. In support of this contention, they cite Daley v Eagan (77 Misc 2d 279). This court respectfully disagrees with the conclusion reached in that case. Section 281 of the Town Law, it seems to this court, is but a logical extension of the powers which may be given to planning boards by town boards under article 16 of the Town Law. For example, section 271 of the Town Law provides for the creation of a planning board by a town board and appointment and removal of such board members. Section 272-a provides that a planning board may prepare and change a comprehensive master plan for the town. Section 276 provides that a town board may authorize the planning board to “approve plats showing lots, blocks or sites, with or without streets”. Sections 277 and 278 impose additional requisites upon the approval of subdivisions by the planning board and recording of such subdivision plats. It would seem to this court that since all of these sections grant such powers to a planning board, with, of course, appropriate controls, to limit approvals under section 281, with all of the safeguards contained therein, to an ad hoc basis, would be inconsistent with these other provisions of article 16 which grant broad powers to planning boards. In addition, section 281 itself contains references to “plat or plats” and “district or districts” which further supports the proposition that the *1007 resolution of the Onondaga town board was a valid exercise of its legislative authority and was not so broad so as to constitute an impermissible grant. (Matter of Rouse v O'Connell, 78 Misc 2d 82.)
Petitioners next make the assertion that an environmental impact statement should have been required by respondent planning board, prior to its approval of the project under review.
At the time the plans for the project were first submitted to the planning board, respondents Buechner provided to the board a short environmental assessment form (EAF) which indicated that the proposed project had no significant environmental impact. All 15 of the questions on this form were answered in the negative. In spite of this, the planning board had some valid concerns about the project, specifically its impact on traffic, visual effects, noise and surface water runoff (soils).
The first addendum to the EAF was directed to answering questions regarding traffic, visual effects, noise and soils. A revision of that addendum was submitted to the board which expanded the previous submission with respect to visual effects and dealt with surface water runoff as opposed to soils. The board, after reviewing this material, as well as obtaining reports from the town engineers, the town highway superintendent, the fire chief, the Onondaga County Planning Board and the Syracuse City Planning Commission, determined that the project would have no significant detrimental effect upon the environment. This determination was made at a meeting of the town planning board on August 23, 1982. The board, at that meeting, and in making its determination, stated in the resolution that it considered the short form EAF and the addendum to that form in reaching its determination.
The question as to whether the planning board properly issued the declaration that the project will have no significant impact on the environment and thus eliminating the need for an environmental impact statement depends upon whether that board “made a thorough investigation of the problems involved and reasonably exercised its discretion”. (H.OM.E.S. v New York State Urban Dev. Corp., 69 AD2d 222, 231.)
*1008 In that case, the Appellate Division, Fourth Department, set forth the criteria which are to be considered in determining whether the agency made that “thorough investigation”. In substance, the court concluded that to support a determination of “no significant impact” it must be shown from an examination of the record that the agency identified the relevant areas of environmental concern, took a hard look at them, and made a reasoned elaboration of the basis for its determination. (H.O.M.E.S. v New York State Urban Dev. Corp., supra, p 232.)
This court is satisfied that the board identified the relevant areas of concern, i.e., traffic, visual effects, noise and surface water runoff, however, this court is not satisfied that the board took a hard look at the problem of surface water runoff or made a reasoned elaboration for its determination.
From the record before the court, it appears that the question of surface water runoff presents a serious problem with the development of this parcel for cluster type attached dwellings or any type of development for that matter. A report of the town engineers dated July 9, 1982, points out five areas of concern regarding drainage, erosion control and reduction in drainage capacity. That report also points out the need for reports on soil conditions, sewer profiles and pumping station details. An examination of the short EAF and the addendum thereto submitted by the Buechners indicate that these areas of serious concern were largely ignored. No significant proposals were presented to remedy the drainage problem outlined in the letter of July 9, 1982, from the town engineers to the town planning board. Neither the site plan, nor the addendum to the environmental assessment form adequately demonstrate how the applicants would deal with this aspect of their proposed development. Furthermore, it is apparent from other portions of the record that drainage would be a serious problem inasmuch as there are two streams on the property; it slopes some 16 feet from its westerly to easterly edge, and that the proposed road grade would not be in conformity with town zoning ordinances (i.e., steeper than permitted under existing town ordinances).
In reaching its determination, the town planning board, in its resolution, relied specifically on the short environ *1009 mental assessment form and the addendum dated May 14, 1982, and revised June 22, 1982, submitted in conjunction therewith. Considered together, the materials supplied in those papers do not, in this court’s opinion, adequately address the question of drainage and surface water runoff raised in connection with this project.
The planning board’s reliance, solely on the above submissions by the developer, did not provide a sufficient basis upon which to make the required determination that this project would have no significant impact upon the environment. Without a firm basis, the board could not and did not make a reasoned elaboration for its determination. (H.O.M.E.S. v New York State Urban Dev. Corp., supra.) Viewed in this light, the determination of the planning board that this project would not have a significant adverse impact on the environment was arbitrary and capricious and is hereby annulled and set aside. Accordingly, on the facts in this case, this court finds that an environmental impact statement is required on this project.
Finally, petitioners contend that the board erred in granting approval for the project under section 281 of the Town Law since the project, they submit, results in increased density in violation of subdivision (b) of that section. That subdivision provides as follows: “(b) The application of this procedure shall result in a permitted number of building plots or dwelling units which shall in no case exceed the number of which could be permitted, in the planning board’s judgment, if the land were subdivided into lots conforming to the minimum lot size and density requirements of the zoning ordinance applicable to the district or districts in which such land is situated and conforming to all other applicable requirements.”
The parcel in question contains approximately 306,000 + square feet of land. According to the plans submitted on this application, the road right of way is 50 feet wide and approximately 500 feet long (town ordinances require a 60-foot right of way for roads). If one deducts the footage allowed for roadway purposes, there remains some 280,000 square feet for development purposes. The remaining land, if developed conventionally, would accommodate 14 single-family dwellings under the R-l residential zoning in the *1010 Town of Onondaga (280,000 square feet 4- 20,000 square feet = 14). This is precisely the number of homes proposed to be constructed in the “cluster type” plan under consideration, and which was approved by the planning board. Were this the sole consideration, this court would not disturb the determination of the planning board on this issue, since at first blush, there would be no increase in density on the parcel and thus it would not violate subdivision (b) of section 281 of the Town Law.
However, the proposed subdivision makes provision for “forever wild” areas on the project. The total land area reserved for this purpose is in excess of 161,000 square feet, leaving a balance of about 120,000 square feet upon which to construct the 14 residences. Thus, it appears that, on average, the dwelling units would, if the “forever wild” area was excluded from the acreage, be allocated approximately 8,600 square feet of land each. This is well below the 20,000 square feet required for dwellings under R-l residential zoning in the town. If the lots were to conform to the requirements of R-l residential zoning, only six residences would be permitted. The question presented is: are the “forever wild” sections of the parcel in question includable for purposes of determining average density under section 281 of the Town Law?
In the case at bar, the plan for the reservation of the “forever wild” areas on the project was initiated by the developers. The land so reserved was not to be used for park, recreation, open space or other municipal purposes directly related to the plat. The ownership of the “forever wild” areas would be vested in the lot owners, subject to the declaration of protective restrictions and covenants for the project. Those covenants reserve a scenic easement over each lot in the subdivision and impose restrictions on the owner’s rights to build thereon or remove vegetation therefrom. In addition, the covenants provide for the development and maintenance of a nature trail for the exclusive use of the property owners in the tract.
As set forth in the declaration, the protective restrictions and covenants are for a term of 19 years, with 10-year renewals. The declarations may be terminated if, prior to renewal, 11 lot owners agree to such termination. From the *1011 foregoing, it is clear that there was no intention on the part of the developers to use the areas set aside as “forever wild” for municipal purposes or for the construction of residences.
The developers, by setting aside such areas on their own, and restricting their use to the residents of the tract, effectively eliminated these areas from consideration in determining density requirements for the balance of the parcel. (Matter of Hiscox v Levine, 31 Misc 2d 151 — 29.4 acres set aside by developers for park purposes excluded in computing density.)
Furthermore, there is serious doubt, because of the terrain on the parcels, reserved by the developers as “forever wild”, that these areas could ever be developed without substantial surface defoliation, grading and filling and consequent severe effect on the environment.
Under the circumstances and facts here presented, this ■ court holds that the areas reserved by the developers and designated as “forever wild” may not be used in computing average density so as to permit the construction of 14 residences on the subject parcel.
Even if we assume, arguendo, that such “forever wild” areas are includable to compute average density, basic flaws in the procedure applied in this case require that the determination of the planning board be annulled.
First, the applicants did not submit a conventional plan for the development of the property in conformity with town zoning ordinances. The purpose of the submission of such a plan is to insure that the utilization of clustering does not result in more dwelling units than would be permitted if the land were subdivided into lots conforming to minimum lot size requirements (Town Law, § 281, subd [b]; Matter of Kamhi v Planning Bd. of Town of Yorktown, 89 AD2d 111). The only plan submitted by the applicants was a so-called “concept study” showing the layout of some 15 lots on the parcel. This type of submission, without road grades, lot sizes, setbacks, side yards or other detail, provided little or no intelligent basis upon which the planning board could satisfy the requirements of subdivision (b) of section 281 of the Town Law with respect to density. However, even in view of this, the town board relied on this *1012 “concept study” in its resolution approving the project. The failure of applicants to submit detailed drawings showing 14 lots which conform to all of the town zoning ordinances, as well as an environmental impact statement in support thereof, was fatal to the approval of the instant plan. Without this basis of comparison, the approval of the cluster development by the town planning board was a nullity.
Finally, the resolution approving the project provided for a $2,800 payment in lieu of dedication of open recreation or park space to the town. There is absolutely no authority under section 281 of the Town Law for the acceptance of a cash payment in lieu of open space for recreational purposes. In this case, the planning board permitted the applicants to make a $2,800 cash payment for the defraying of costs of recreation facilities to be provided for the residents of the Town of Onondaga in lieu of dedicating open space to the town. This, the planning board may not do~ under section 281. In Matter of Kamhi v Planning Bd. of Town of Yorktown (supra), the court dealt extensively with section 281 subdivision approvals and how that section relates to sections 277 and 278 of the Town Law. The court pointed out (p 127): “Unlike subdivision approval under sections 277 and 278, the tract itself must provide such common open space as a condition of clustering approval and there is no discretion on the part of the planning board to allow payment of money in lieu of setting aside open space.”
For the above reasons, the determination of the Town Planning Board of the Town of Onondaga approving the plans for cluster development of the 7.03 acre parcel owned by respondents Buechner is annulled and set aside and the petition is granted.