■ In the Matter of SIERRA CLUB et al., Appellants, v PALISADES INTERSTATE PARK COMMISSION et al., Respondents, and MARRIOTT CORPORATION, Intervenor-Respondent. — Appeal by petitioners, as limited by their brief, from so much of a judgment of the Supreme Court, Orange County (Isseks, J.), entered June 16, 1982, as dismissed that portion of their application which sought (1) a declaration that the respondent Palisades Interstate Park Commission has violated section 3 of article IV of the Palisades Interstate Compact by "surrendering, modifying, altering or exchanging" a certain conservation easement without prior legislative approval; (2) a declaration that the respondent Palisades Interstate Park Commission has violated section 123-b of the State Finance Law by "surrendering, modifying, altering or exchanging" the said easement; and (3) injunctive relief. Judgment modified, on the law, by adding thereto provisions declaring that the Palisades Interstate Park Commission has not violated section 3 of article IV of the Palisades Interstate Compact or section 123-b of the State Finance Law. As so modified, judgment affirmed insofar as appealed from, without costs or disbursements. The instant proceeding was commenced by the petitioners, *inter alia,* to enjoin the respondent Palisades Interstate Park Commission (hereinafter the PIPC) from concluding an agreement with the intervenor, Marriott Corporation (hereinafter Marriott), concerning a certain conservation easement held by the PIPC affecting approximately 239 acres of land located in Ulster County, New York. The 239 acres consist of a contiguous parcel, including Lake Minnewaska, a narrow strip of land surrounding the lake and a parcel of land to the west of the lake that contains a nine-hole golf course. The conservation easement was originally obtained by the PIPC in 1977 from Lake Minnewaska Mountain Houses, Inc., which is the present owner of the underlying freehold. In addition to the conveyance to the PIPC of the conservation easement, some 1,370 acres of adjoining land were conveyed in fee to the PIPC by Lake Minnewaska Mountain Houses, Inc. In 1980 Marriott entered into an agreement to purchase a 590-acre parcel of land from Lake Minnewaska Mountain Houses, Inc., which parcel also included the approximately 239 acres bound by the conservation easement. Marriott proposed to build a resort complex on the unencumbered land that it had contracted to purchase and the project was conditionally approved by the Department of Environmental Conservation (hereinafter

DEC) on June 2, 1981. Among the proposals considered by the DEC was Marriott's proposal to locate a golf course at the resort. The DEC permitted Marriott to expand the nine-hole golf course which was located within the easement area to an 18-hole course which would also be located within the easement area. In order to permit the expansion of the golf course within the area of the conservation easement, the existing conservation easement had to be amended. After successful negotiations between the PIPC and Marriott, the PIPC, on July 20, 1981, (1) passed a resolution agreeing to replace the existing conservation easement with a "Restated and Amended Conservation Easement Agreement", permitting.Marriott to construct the expanded golf course, and (2) directed its general manager to execute the necessary documents. Moreover, by virtue of the Restated and Amended Conservation Easement Agreement, Marriott agreed, *inter alia,* to (1) expand the area of the original conservation easement by an additional 80 to 90 acres, (2) allow the public access to the golf course and use of Lake Minnewaska for swimming and boating, (3) restrict development on lands not subject to the original conservation easement, and (4) contribute $50,000 to the PIPC for trail maintenance uses. Following approval by the PIPC of the resolution to amend the conservation easement, petitioners requested the PIPC to seek and obtain legislative approval for the agreement amending the conservation easement. Upon the refusal of PIPC to seek that approval, the petitioners commenced the instant proceeding. In this proceeding, petitioners alleged that the proposed agreement between the PIPC and Marriott, which amends the conservation easement without prior legislative approval, violates section 3 of article IV of the Palisades Interstate Compact (L 1937, ch 170; hereafter the Compact) and thereby also violates section 123-b of the State Finance Law. Special Term dismissed the petition on the merits. Section 3 of article IV of the Compact, upon which petitioners rely, provides in pertinent part as follows: "§ 3. All lands the title to which * * * shall hereafter be owned by the commission shall be continue under the jurisdiction of the commission and shall be used only for public park purposes and none of said lands or any part thereof shall be sold, exchanged or conveyed except with the consent of both states by specific enactments; provided, however, that the commission shall have power to grant easements, licenses, permits and other rights over any lands held by it in either state when in the opinion of the commission the same will not interfere with the use and enjoyment of the park by the public." Specifically, petitioners contend that the conservation easement herein falls within the definition of the term "lands" and that pursuant to section 3 of article IV of the Compact, the proposed amendment of the conservation easement could not be achieved without prior legislative approval. We disagree with petitioners' argument. Insofar as is relevant to the case at bar, the Compact is quite clear in providing that lands which shall "hereafter be owned by the commission" cannot be "sold, exchanged or conveyed" without the consent of both Legislatures. However, it is undisputed that the PIPC does not own the land burdened by the easement. It merely has an easement, which is "a right, distinct from ownership, to use in some way the land of another" (*Kutschinski v Thompson,* 101 NJ Eq 649, 138 A 569, 573; *Belott v State of New York,* 45 Misc 2d 1067; *Queens Park Gardens v Long Is. Water Corp.,* 277 App Div 1146; *Boyd v McDonald,* 408 P2d 717 [Nev]; 3 Powell, Real Property, par 405). Accordingly, since an easement does not come within the contemplation of the phrase "lands the title to which * * * shall * * * be owned" in section 3 of article IV of the Compact, it follows that the proposed agreement amending the conservation easement does not violate that Compact and may be consummated without prior legislative approval. Moreover, petitioners' claim that the proposed agreement amending the conservation easement violates *section 123-b of the State*

Finance Law must also fall since that statute does not prohibit any acts but rather merely grants standing to citizen taxpayers to commence an action for equitable or declaratory relief against an officer or employee who is or is about to cause a wrongful expenditure or disbursement of State funds or property in contravention of some rule of law enunciated elsewhere. Finally, although we agree with the determination of Special Term, it should not have directed dismissal of the petition but should instead have declared the rights of the parties (see *Lanza v Wagner*, 11 NY2d 317, app dsmd 371 US 74). Accordingly, the judgment insofar as appealed from, has been modified to the extent indicated. Mangano, Niehoff and Boyers, JJ., concur.

Lazer, J. P., concurs in the result, with the following memorandum: While I concur in the result, I write separately to distance myself from the majority's declaration that "an easement does not come within the contemplation of the phrase 'lands the title to which * * * shall * * * be owned' in section 3 of article IV of the [Palisades Interstate] compact". Both the Real Property Actions and Proceedings Law and the Real Property Law define "lands" as being coextensive in meaning with "lands, tenements, and hereditaments" (RPAPL 111, subd 1; Real Property Law, § 2, subd 1). Since the conservation easement granted to the Palisades Interstate Park Commission is a negative easement appurtenant and an incorporeal hereditament, it comes within the definition of "lands" as described in the mentioned statutes. The reason I am compelled to join in the result reached by my colleagues is that the Compact gives the commission the "power to grant easements". Here, the commission — owner of a conservation easement — has agreed to subject that easement to another easement in favor of Marriott Corporation that will permit golf course use of a portion of the property covered by the original easement, provided that the golf course is open to the public. Whatever the merits of the commission's transaction with Marriott, I am unable to conclude that the Compact was violated by the commission's grant of an easement upon its easement. I am aware, of course, that the compact was drawn in an era before the acquisition of conservation easements by public authorities became a widespread substitute for acquisition of fee title. If the passage of time and the use of innovative legal methods of preserving wilderness have created a loophole and if the commission is to be prevented from entering into similar transactions by which it grants easement rights to commercial interests without approval of the two States involved, it will be necessary to amend the Compact. [114 Misc 2d 52.]