OPINION OF THE COURT
 

 Meyer,
 
 J.
 

 Notwithstanding that a previously granted conservation easement proscribes erection of residences on part of the land included in a cluster zoning application, the land thus burdened may be counted in determining the number of residential units that may be erected on the unburdened acreage. A conservation easement is not an “applicable requirement” within the meaning of Town Law § 281 (b), and nothing in the Town Law or the Environmental Conservation Law forecloses the owner of the fee under land thus burdened from using it as open area required under the cluster zoning ordinance. The Appellate Division having annulled the Planning Board’s approval of intervenor’s
 
 *390
 
 cluster zoning application, its order should, therefore, be reversed, with costs, and the judgment of Supreme Court, Ulster County, which dismissed the petition, should be reinstated.
 

 I
 

 Lake Minnewaska Mountain Houses, Inc. (Mountain Houses), owns approximately 450 acres of land located on Lake Minnewaska in the Town of Rochester, Ulster County. In 1977, Mountain Houses sold to the Palisades Interstate Park Commission (PIPC) a conservation easement on 240 acres of the land contiguous to the 10,000 acre Minnewaska State Park owned by PIPC. The easement permits the erection of one single family residence, a potable water storage pond and the maintenance of the existing golf course and accessory areas, but otherwise proscribes development of the 240 acres. By agreement dated February 26,1980, Mountain Houses sold the entire 450 acres to the Marriott Corporation,
 
 [1]
 
 subject, however, as a condition precedent to closing, to Marriott’s obtaining approval of subdivision of the property to permit construction of a hotel and condominium units.
 

 In April 1982, Marriott applied to the Town Planning Board for approval of a plat of the 450 acres calling for construction of a hotel and 300 residential condominium units, the condominium units to be clustered on part of the 210 acres not covered by the conservation easement. The district in which the 450 acres is located requires a plot of one or more acres per residential uni t. After notice to interested parties and a public hearing on the application, the Planning Board approved the requested 300 units. PIPC, though given notice, interposed no objection.
 

 Petitioners, eight individual owners of nearby properties and two not-for-profit conservation organizations, then commenced this article 78 proceeding against the Planning Board. Special Term granted Marriott’s application to intervene and on the merits dismissed the petition. The Appellate Division reversed, concluding that the 240 acres subject to the conservation easement could not be counted in determining the number of uni bs permissible under the town’s cluster zoning resolution, because the conservation easement constituted an “applicable requirement” within the meaning of Town Law § 281 (b), the enablin g act pursuant to which the cluster zoning provisions of the zonin g ordinance were adopted. Both the Planning Board and Marrio tt appeal as of right.
 

 
 *391
 
 Town Law § 281 provides in pertinent part
 
 [2]
 
 that:
 

 “The town board is hereby empowered by resolution to authorize the planning board, simultaneously with the approval of a plat or plats pursuant to this article, to modify applicable provisions of the zoning ordinance, subject to the conditions hereinafter set forth and such other reasonable conditions as the town board may in its discretion add thereto. Such authorization shall specify the lands outside the limits of any incorporated village to which this procedure may be applicable. The purposes of such authorization shall be to enable and encourage flexibility of design and development of land in such a manner as to promote the most appropriate use of land, to facilitate the adequate and economical provision of streets and utilities, and to preserve the natural and scenic qualities of open lands. The conditions hereinabove referred to are as follows:
 

 * * *
 

 “(b) The application of this procedure shall result in a permitted number of building plots or dwelling units which shall in no case exceed the number which could be permitted, in the planning board’s judgment, if the land were subdivided into lots conforming to the minimum lot size and density requirements of the zoning ordinance applicable to the district or districts in which such land is situated and conforming to all other applicable requirements.
 

 * * *
 

 “(d) In the event that the application of this procedure results in a plat showing lands available for park, recreation, open space, or other municipal purposes directly related to the plat, then the planning board as a condition of plat approval may establish such conditions on the ownership, use, and maintenance of such lands as it deems necessary to assure the preservation of such lands for their intended purposes. The town board may require that such conditions shall be approved by the town board before the plat may be approved for filing.”
 

 The Town of Rochester, pursuant to that authorization, has incorporated in its zoning ordinance provisions for residential cluster development permitting its Planning Board to vary the residential density within a tract provided that the proposed development produces a total acreage density as specified for the district in which located and guarantees permanent retention and maintenance of “open areas.”
 

 
 *392
 
 Petitioners argue (1) that conservation easements are authorized by ECL 49-0301
 
 et seq.
 
 and, therefore, that the PIPC easement is an “applicable requirement” within the meaning of Town Law § 281 (b), and (2) that because the land covered by the easement is not “legally buildable,” it cannot be considered in determining permissible density for a cluster zoning development. We disagree and, therefore, reverse.
 

 II
 

 The use that may be made of land under a zoning ordinance and the use of the same land under an easement or restrictive covenant are, as a general rule, separate and distinct matters, the ordinance being a legislative enactment and the easement or covenant a matter of private agreement
 
 (see, Ginsberg v Yeshiva of Far Rockaway,
 
 36 NY2d 706,
 
 affg
 
 45 AD2d 334, 337-338; 4 Rathkopf, The Law of Zoning and Planning § 57.02 [4th eel]). Thus, a particular use of land may be enjoined as in violation of a restrictive covenant, although the use is permissible under the zoning ordinance
 
 (Gordon v Incorporated Vil. of Lawrence,
 
 56 NY2d 1003,
 
 affg
 
 84 AD2d 558, 559;
 
 Regan v Tobin,
 
 89 AD2d 586, 587), and the issuance of a permit for a use allowed by a zoning ordinance may not be denied because the proposed use would be in violation of a restrictive covenant
 
 (People ex rel. Rosevale Realty Co. v Kleinert,
 
 204 App Div 883,
 
 on later appeal
 
 206 App Div 712,
 
 appeal dismissed
 
 236 NY 605,
 
 order resettled
 
 207 App Div 828,
 
 affd
 
 237 NY 580,
 
 writ dismissed
 
 268 US 6416;
 
 Matter of 109 Main St. Corp. v Burns,
 
 14 Misc 2d 1037;
 
 Matter of Forte v Wolf,
 
 225 NYS2d 858;
 
 cf. Matter of Isenbarth v Bartnett,
 
 206 App Div 546,
 
 affd
 
 237 NY 617).
 

 Petitioners seek to distinguish those rules as related only to covenants and easements appurtenant to an interest in real property, whereas a conservation easement, as defined in article 49 of the Environmental Conservation Law, may be held only by a public body or not-for-profit conservation organization (ECL 49-0305 [3] [a]) and is enforceable notwithstanding that it is of a character wholly distinct from the easements traditionally recognized at common law and notwithstanding defenses that would defeat a common-law easement (ECL 49-0305 [5]). The short answer to the argument is that ECL article 49 was not enacted until 1983 and that PIPC does own the adjacent Minnewaska State Park. Thus the easement granted PIPC in 1977 was a common-law easement appurtenant, which, whatever its burden upon intervenor’s use of the 240 acres it covered, cannot be construed to be an “applicable requirement” within the meaning of Town Law § 281 (b), unless the usual rule that words
 
 *393
 
 in a statute are to be construed by reference to words and phrases with which they are associated (McKinney’s Cons Laws of NY, Book 1, Statutes § 239 [a]) is to be ignored.
 
 [3]
 

 More importantly, the present version of Town Law § 281 was enacted by chapter 963 of the Laws of 1963, 20 years before enactment of the Environmental Conservation Law provisions relating to conservation easements (L 1983, ch 1020). Petitioners point to nothing in the legislative history of either statute to suggest a legislative intent to include within the concept of the “other applicable requirements” referred to in Town Law § 281 (b), such an easement rather than other zoning and planning requirements imposed by the Town Law. This, therefore, is not a case such as
 
 Baddour v City of Long Beach
 
 (279 NY 167,
 
 appeal dismissed
 
 308 US 503), in which by interim ordinance “designed to effect compulsory obedience to the restrictive covenants in the grants from the original owners” (279 NY, at p 172) the legislative body indicated an intent to proscribe boarding house use, which was proscribed by the prior restrictive covenant, even though the zoning ordinance as finally adopted prohibited use for business purposes and did not specifically preclude boarding houses. Indeed, if it were, a serious constitutional question might arise whether Mountain Houses had not been deprived of all economic value of the fee underlying the easement
 
 (cf. French Investing Co. v City of New York,
 
 39 NY2d 587,
 
 appeal dismissed
 
 and
 
 cert denied
 
 429 US 990) which nevertheless remains subject to taxation, there being here, unlike the situation in
 
 Baddour,
 
 serious question whether there is any reasonable income-productive or other use that could be made of the fee as restricted by the conservation easement.
 

 Nor are petitioners aided, as they suggest, by the provision of the Environmental Conservation Law authorizing enforcement of its provisions by parties other than the grantor or holder of the easement. To the contrary, that provision refutes their position for if Town Law § 281 (b) is construed as allowing nearby landowners to block cluster subdivision as contrary to the conservation easement, the class of persons having standing to enforce a conservation easement will have been expanded significantly beyond the limits deliberately set by the Legislature in the ECL.
 
 [4]
 

 
 *394
 
 Ill
 

 The argument that, because the 240 acres subject to the easement cannot be built upon while the easement continues in force, the burdened land may not be counted in determining cluster zoning density is of no greater aid to petitioners. “[I]t is undisputed that the PIPC does not own the land burdened by the easement. It merely has an easement, which is
 
 ‘a
 
 right, distinct from ownership, to use in some way the land of another’ ”
 
 (Matter of Sierra Club v Palisades Interstate Park Commn.,
 
 99 AD2d 548, 549,
 
 lv denied
 
 63 NY2d 604). Mountain Houses, having granted PIPC only an easement, continued to own the underlying fee and with it the right to use the property in any manner not in violation of the easement. Marriott, as Mountain Houses’ conditional vendee, proposes to use the land in fulfillment of its obligation under the cluster development provisions of the town zoning ordinance to provide open areas and guarantee their permanent maintenance and retention, a use in furtherance of the purpose declared by Town Law § 281, “to preserve the natural and scenic qualities of open lands” and in no way violative of PIPC’s easement.
 

 As the conditional vendee of the fee of the 450-acre tract, Marriott is entitled to have the entire 450 acres considered in determining the permissible number of dwelling units. One of the major purposes of cluster zoning being the preservation of the natural and scenic qualities of open land, it is fundamentally inconsistent with the statutory purpose to hold that because that part of the land that will be thus preserved under a cluster zoning proposal is also subject to an easement that preserves it as open land, it may not be counted in determining density. The more so is this true in light of the case law, discussed above, holding zoning ordinances and restrictive covenants to be separate and distinct matters.
 
 [5]
 

 
 *395
 
 Equally unavailing are petitioners’ suggestions (1) that if the property covered by the conservation easement may be counted, density on the adjoining land greater than permissible under conventional zoning will result, threatening the preservation goal of the conservation easement, and (2) that, having granted an easement to PIPC, Mountain Houses should not be permitted to “double dip” by using the underlying fee in computing cluster density. The answer to the first is that the declared purposes of Town Law § 281 contemplate both “flexibility of design and development” and the preservation of “the natural and scenic qualities of open lands.” Those purposes are frustrated if the trade-off of increased density on the developed portion of the land in return for preserving undeveloped the remainder of the land* ****
 
 [6]
 
 is foreclosed by exclusion of the open area from the density computation simply because the developer has agreed with others to keep the open areas open. Moreover, because the PIPC easement makes the burdened land available for use and enjoyment of the public (NY Const, art XIV, §4; ECL 49-0301; PRHPL 9.05 [5]), it is difficult to understand how the preservation goal of the easement is threatened by inclusion of the open area in the density computation. To read the statutes as necessarily implying the rule of exclusion for which petitioners contend would be to ignore not only the history of Town Law § 281 (see, n 5, supra) and the usual rules of statutory construction
 
 (Matter of Kamhi v Planning Bd., 59
 
 NY2d 385, 392;
 
 People v Graham, 55
 
 NY2d 144, 152), but also the fact that subdivision (b) of that section makes the number of permitted dwelling units a matter of “the planning board’s judgment,” which may be overturned only if illegal, arbitrary or an abuse of discretion (CPLR 7803; Town Law § 282).
 
 [7]
 

 
 *396
 
 The double dip argument is essentially addressed to the process of negotiation with PIPC rather than to any provision of either law. Petitioners point to nothing in the Environmental Conservation Law that would prevent PIPC from acquiring a.n easement over the cluster open areas had cluster approval been sought first, or that requires PIPC when acquiring a conservation easement to proscribe use of the burdened land if the landowner later applies for cluster development approval.* ***
 
 [8]
 
 Had cluster approval been obtained first, the acquisition price of a conservation easement over the already burdened open area would probably have been less, but even that is not entirely clear when it is remembered that PIPC’s purposes include not only obtaining conservation easements (ECL 49-0303 [3]), but also the provision of hotel and other facilities for the use of the public (PRHPL 9.05 [5]). Whatever the result, the point is that the matter was within the discretion of PIPC and, as already noted, it neither interposed an objection to Marriott’s 300-unit application nor included in its conservation easement agreement anything related to use of the burdened area as cluster zone open space.
 
 [9]
 

 For the foregoing reasons the order of the Appellate Division should be reversed, with costs, and the judgment of Special Term, Ulster County, should be reinstated.
 

 Chief Judge Wachtler and Judges Jasen, Simons, Kaye and Alexander concur.
 

 Order reversed, with costs, and judgment of Supreme Court, Ulster County, reinstated.
 

 [1]
 

 . The agreement also covered additional acreage not involved in this proceeding.
 

 [2]
 

 . Village Law § 7-738 contains essentially identical provisions and General City Law § 37 includes comparable, though not identical, provisions.
 

 [3]
 

 . The reference in Town Law § 281 (b) to “requirements of the zoning ordinance” implies that the “other applicable requirements” in its concluding phrase be governmental, if not legislative, in origin. PIPC, formed under interstate compact (PRHPL 9.01), is a governmental agency, but it has purchased an easement, not imposed a governmental requirement.
 

 [4]
 

 . At the time that the Planning Board determination challenged in this
 
 *394
 
 proceeding was made, the statute provided that a conservation easement could be enforced by its grantor, holder (which must be a public body or not-for-profit corporation [ECL 49-0305 (3)]), the Attorney-General or an organization designated in the easement as having a third-party enforcement right (ECL 49-0305 [5]). As amended by chapter 292 of the Laws of 1984, the statute r.ow provides that a conservation easement is enforceable only by the grantor, holder or a not-for-profit conservation organization designated in the easement as having third-party enforcement rights. Under either version of the statute, petitioners lack standing to enforce the easement granted to PIPC.
 

 [5]
 

 .
 
 Matter of Hiscox v Levine
 
 (31 Misc 2d 151, 155) and
 
 Kanaley v Brennan
 
 (119 Misc 2d 1003), cited by petitioners, hold otherwise but are not to be followed in this respect. The
 
 Hiscox
 
 statement was dictum, unsupported by reasoning or authority, but may have resulted from the use in the last sentence of the then version of Town Law § 281 of the phrase “adjoining land” to describe the open space to be safeguarded. Nothing in the present wording of
 
 *395
 
 the section suggests, as petitioners argue, that it was intended to
 
 reduce
 
 density below that permissible under applicable statute or ordinance. The statement in
 
 Kanaley
 
 is based solely on
 
 Hiscox,
 
 is likewise dictum, and fails to note that as presently worded Town Law § 281 (d) leaves no doubt that the open land to be protected is part of the plat for which cluster zoning approval is sought.
 

 [6]
 

 . As the Appellate Division stated in
 
 Matter of Kamhi v Planning Bd.
 
 (89 AD2d 111, 125,
 
 revd on other grounds
 
 59 NY2d 385): “It is entirely optional for the developer to utilize the cluster technique with its concomitant savings in construction costs by accepting the condition of dedication; or, he may refuse the opportunity and conventionally develop the parcel [citation omitted]. Either way, he is limited to the same number of dwellings.”
 

 [7]
 

 . The Appellate Division decision in
 
 Matter of Kamhi v Planning Bd.
 
 (89 AD2d 111) is not to the contrary. That the landowner there involved was limited to eight residences on his 11-acre parcel (89 AD2d, at p 129) resulted from the Town Board’s specific authorization to the Planning Board to employ clustering for the particular land (89 AD2d, at p 113) or from the Yorktown Drainage Law
 
 (id.,
 
 at p 112), or both. But both are land use controls imposed by
 
 *396
 
 legislative act of the Town Board and thus different from the easement purchased by PIPC in the instant case.
 
 Matter of County of Suffolk
 
 (70 Misc 2d 232, 243) likewise turned upon the fact that under the applicable zoning ordinance underwater land could not be built upon.
 

 [8]
 

 . Whether such a proscription (as distinct from a provision requiring refund of part of the acquisition price) can be made part of a conservation easement which is otherwise not more burdensome than the use permitted for a cluster zoning open area is a question beyond the scope of this case, on which we express no opinion.
 

 [9]
 

 . The record contains a proposed Restated and Amended Conservation Easement Agreement which specifically reserves that right to Marriott, but we are not advised whether in fact it has since been executed
 
 (see, however, Matter of Sierra Club v Palisades Interstate Park Commn.,
 
 99 AD2d 548).