O'Mara v. Town of Wappinger

UNITED STATES COURT OF APPEALS
FOR THE SECOND CIRCUIT

————————

August Term, 2006

(Argued: January 22, 2007       Decided: April 16, 2007
                                Errata Filed: May 2, 2007)
Docket No. 06-0078-cv

————————

DONALD J. O'MARA III, PATRICK L. O'MARA SR., AND ABSOLUTE PROPERTY MANAGEMENT, INC.,

*Plaintiffs-Counter-Defendants-Appelles*,

—v.—

TOWN OF WAPPINGER,

*Defendant-Counter-Claimant-Appellant.*

————————

B e f o r e : SOTOMAYOR, KATZMANN, *Circuit Judges* and CEDARBAUM, *District Judge.**

————————

Appeal from a judgment of the Southern District of New York (McMahon, *J.*).  Following a bench trial the district court held that: 1) the plaintiffs-appellees owned two parcels of property free and clear of a disputed open space restriction and 2) the decision by the defendant-appellant to withhold a certificate of occupancy based on that open space restriction was a violation of 42 U.S.C. § 1983.  Because we conclude that the enforceability of the open space restriction is a question of state law that has not been definitively addressed by New York courts we certify the question to the New York Court of Appeals.  With regard to the federal claim, however, we

————————

* The Honorable Miriam Goldman Cedarbaum of the United States District Court for the Southern District of New York, sitting by designation.

conclude that the district court erred when it determined that plaintiffs-appellees have established a property interest cognizable under 42 U.S.C. § 1983, and we reverse the judgment of the district court. **REVERSED IN PART AND QUESTION CERTIFIED.**

————————————

APPEARING FOR DEFENDANT-

COUNTER-CLAIMANT-APPELLANT: GARY STEIN (Frank Lasalle, Dacia Cocariu, Schulte Roth & Zabel LLP and Emanuel F. Saris, Vergilis, Stenger, Roberts, Pergament & Viglotti, LLP *on the brief*), Schulte, Roth & Zabel LLP, New York, NY.


APPEARING FOR PLAINTIFFS-

COUNTER-DEFENDANTS-APPELLEES: KENNETH C. BROWN ( James W. Gatthaar, Susan E. Galvao, Bleakley Platt & Schmidt, LLP and Maurice J. Salem *on the brief*), Bleakley Platt & Schmidt, LLP, White Plains, NY.



Michael E. Kenneally, Jr., Albany, NY for The Association of Towns of the State of New York as *amicus curiae* in support of defendant-counter-claimant-appellant Town of Wappinger.

————————————

KATZMANN, *Circuit Judge*:

The Town of Wappinger ("Town") appeals from a judgment resolving the enforceability of an open space restriction imposed by the Town of Wappinger Planning Board ("Planning Board"). This case calls on us in principal part to resolve a question of New York property law: Is an open space restriction imposed by a subdivision plat under New York Town Law § 276 enforceable against a subsequent purchaser, and under what circumstances? For the reasons that follow we believe this question should be answered by the New York courts and, thus, we certify it to the New York Court of Appeals. The district court also held that the Town was liable under 42 U.S.C. § 1983 ("Section 1983") for actions taken to enforce the open space restriction.

2

Because we respectfully differ with the district court's application of federal law, we now reverse.

## I.

The pertinent facts, as found by the district court at trial except where otherwise noted, are as follows: In 1962 two developers, David Alexander and Fred Lafko, purchased property in the Town: they planned to develop a condominium project to be known as Wildwood Manor on this property. *O'Mara v. Town of Wappinger*, 400 F. Supp. 2d 634, 636 (S.D.N.Y. 2005). On or about December 17, 1962, the Planning Board tentatively approved a preliminary layout for the project. *Id.* The Planning Board conditioned its approval, in part, on the creation of a "permanent open space on the plat."[1] *Id.* On or about January 23, 1963, the Planning Board approved a plat of the Wildwood Manor development which divided the property into seven parcels ("1963 Plat") including two parcels, Parcels B and E, which were designated the "buffer"area where the open space would be. *Id.* at 637. On the plat the words "Open Space" are written on Parcels B and E. *Id.* The minutes for the January 23 meeting at which the plat was approved ("Planning Board Minutes") indicate that it was accepted subject to eight conditions, the last of which was that "no building permits will be issued for Parcels B and E, as indicated on the [1963] Plat." *Id.* The 1963 Plat and the Planning Board Minutes were filed with the Town. *Id.* The 1963 Plat was also filed with the Dutchess County Clerk's Office.[2] The Wildwood

---

[1] A plat is a "map describing a piece of land and its features, such as boundaries, lots, roads, and easements." Black's Law Dictionary 1188-89 (Bryan Garner ed., 8th ed. 2004).

[2] While the district court's findings of fact do not address whether either the 1963 Plat or the Planning Board Minutes were filed with the Dutchess County Clerk's Office, it is clear from the testimony of witnesses for both the O'Maras and the Town that at least the 1963 Plat is on

3

Manor condominiums were constructed and continue to be occupied. *Id.* at 638. Parcels B and E remained undeveloped until the events that gave rise to this litigation. *Id.*

Plaintiff-appellee Absolute Property Management, a company owned by plaintiffs-appellees Donald O'Mara and Patrick O'Mara (collectively "the O'Maras"), acquired Parcels B and E for $29,500 in an *in rem* tax sale on October 18, 2000, with the intention of constructing ten single-family houses. *Id.* at 636, 638. In 2002, the O'Maras began to take steps toward constructing a first house, which was intended to serve as a residence for Donald O'Mara and his family, on Parcel B. *Id.* at 638. Initially, development progressed smoothly: The Town issued a building permit and a temporary certificate of occupancy, and approved both an interim survey for the lot on which the house was to be built and a site plan. *Id.*

The strife between the O'Maras and the Town can be traced to July 2003 when Ronald Lafko, the son of Fred Lafko, approached a Town Councilman to express his concern that the development violated the 1963 Plat. *Id.* at 639. Nothing happened immediately, but in November 2003, George Kolb ("Kolb"), the newly-appointed Town Building Inspector, issued a stop work order based on the open space restriction.[3] *Id.* Donald O'Mara immediately protested the issuance of the stop work order and met with Town officials in an attempt to resolve the matter. *Id.* The Town allowed him to continue to complete some exterior work on the site but did not remove the stop work order. *Id.*

_____

file there. The O'Maras do not dispute this point.

[3] The Town issued two stop work permits on November 6, 2003, relating to wetlands encroachment and grading, but there is no evidence that those actions were in any way related to the 1963 Plat. *O'Mara*, 400 F. Supp. 2d at 639.

4

On December 2, 2003, an attorney for the Town made a written settlement proposal to the O'Maras' counsel in which the Town offered to grant a certificate of occupancy provided the rest of Parcels B and E were dedicated to the Town. *Id.* at 640, 645. The O'Maras responded by filing this action in the Southern District of New York.

The O'Maras' original complaint alleged a claim under the Takings Clause, which was dismissed on the eve of trial, and a claim under Section 1983. The complaint was amended to add claims for a declaratory judgment that the O'Maras owned Parcels B and E free and clear of the open space restriction, as well as claims for fraud and negligent misrepresentation. The case went to trial in October 2005. Midway through the trial, on the suggestion of the district court, both sides waived their right to a jury trial, and the evidence was presented to the court as the finder of fact. *Id.* at 636 n.1.

Following the completion of the trial, the district court held that the O'Maras were entitled to a declaratory judgment and damages under Section 1983. The open space restriction was deemed unenforceable because it had not been recorded with Dutchess County and the O'Maras were purchasers for value who had neither actual nor constructive notice of the restriction. *Id.* at 642-43. Turning to the Section 1983 claim, the district court concluded that because the O'Maras had a "legitimate claim of entitlement" to a certificate of occupancy and because the Town's basis for withholding the certificate "was illegal, " the Town had violated the O'Maras' constitutional right to substantive due process, and they were entitled to damages. *Id.* at 644-45. Finally, the district court held that the O'Maras were not entitled to relief on their

fraud and negligence claims.[4]  *Id.* at 646.

The district court's final order and judgment, which included an award of attorneys' fees under Section 1983, was entered on February 22, 2006.  *Id.* at 646.  The Town filed a timely notice of appeal.

**II.**

In reviewing the decision of a district court following a bench trial, we review findings of fact for clear error and conclusions of law *de novo*.  *See Rose v. AmSouth Bank of Fla.*, 391 F.3d 63, 65 (2d Cir. 2004).  The Town has not challenged the district court's findings of fact on appeal.  Our review of the district court's legal conclusions will proceed in two parts.  First, we review the conclusion that, under New York law, the open space restriction was not enforceable against the O'Maras.  Second, we review the district court's conclusion that the Town violated the O'Maras' constitutional rights for purposes of Section 1983.

*Enforceability of the Open Space Restriction*

The district court assumed that the enforceability of the open space restriction against the O'Maras was governed by New York Real Property Law § 291, the statute that addresses the recording of a "conveyance of real property."  N.Y. Real Prop. Law § 291.[5]  The New York

---

[4] The O'Maras have not appealed this holding.

[5] As an alternative basis for finding that the open space restriction had to be recorded, the district court posited that the Town had acted pursuant to New York General Municipal Law § 247 in imposing the open space restriction.  *Id.* at 642.  General Municipal Law § 247 authorizes

legislature has defined a conveyance as a "written instrument" that "create[s], transfer[s], mortgage[s], or assign[s]" an interest in real property, N.Y. Real Prop. Law § 290(3), and the opinion below does not discuss why a duly promulgated zoning regulation should fall within this definition.[6] The district court also did not explain why New York statutes that describe the powers of town planning boards in approving subdivisions and filing subdivision maps did not govern. *See* N.Y. Town Law § 276; N.Y. Real Prop. Law § 334.

No New York court decision appears to have identified explicitly the law governing the enforceability of a zoning regulation imposed during a subdivision process against a subsequent purchaser. For this reason and because we are cognizant that this is an area of law that has long been recognized as one in which the state courts have far greater competence than the federal courts, *see, e.g., Harlen Assocs. v. Inc. Vill. of Mineola*, 273 F.3d 494, 505 (2d Cir. 2001)

---

towns to acquire by "purchase, gift, grant, bequest, devise, lease or otherwise" interests in real property for the purpose of preserving "open spaces," N.Y. Gen. Mun. Law § 247(2), and makes clear that any interest acquired must be recorded to be enforceable against subsequent purchasers, *id.* § 247(4). The district court did not find, as part of its findings of fact, that the Town acted pursuant to General Municipal Law § 247 in imposing the open space restriction, and there is no evidence in the record to support such a finding. Absent a factual finding that the Town acted pursuant to that statute, we will not presume that it did, particularly in the face of clear evidence that the 1963 Plat was approved by the Town Planning Board pursuant to New York Town Law § 276.

[6] The district court principally relied on *Ioannou v. Southold Town Planning Board*, 758 N.Y.S.2d 358 (2d Dep't 2003) as establishing that section 291 was applicable, but *Ioannou* addresses the enforceability of "[r]estrictive covenants," *id.* at 359, not zoning restrictions, and is therefore inapposite. *Ioannou* does state that the restriction in question was "a condition imposed on a prior owner not to further subdivide the property." *Id.* at 360. The Town of Southold Planning Board's brief in *Ioannou* makes clear that the "condition" referred to was a signed agreement entered into between a private developer and the Town of Southold Planning Board, described in the brief as a "declaration of covenants," and not a restriction imposed by the Planning Board through its zoning powers. Brief of Appellant Town of Southold Planning Board at *4-5*, Ioannou v. Southold Town Planning Bd.*, 758 N.Y.S.2d 358 (2d Dep't 2003) *available at* 2002 WL 32377276.

7

(rejecting § 1983 claim challenging zoning decision and noting that "[s]tate courts are better equipped in this arena and we should . . . avoid unnecessary state-federal conflict with respect to governing principles in an area principally of state concern" (quotation marks and alterations omitted)), we believe that it is appropriate to certify the important state law question this case raises to the New York Court of Appeals to answer in the first instance.[7]

Under Second Circuit Rule § 0.27 and New York law we may certify a question to the Court of Appeals when a question of New York law is "determinative" of a claim before us and "no controlling precedent of the Court of Appeals" resolves the question. 22 N.Y.C.R.R. § 500.27; *see Morris v. Schroder Capital Mgmt. Int'l*, 445 F.3d 525, 530 (2d Cir. 2006). We do not certify every case that meets these criteria. Where possible, it is our responsibility to predict how the forum state's highest court would rule. *See DiBella v. Hopkins*, 403 F.3d 102, 111 (2d Cir. 2005) ("Because it is our job to predict how the forum state's highest court would decide the issues before us, we will not certify questions of law where sufficient precedents exist for us to make this determination." (internal quotation marks omitted)). In deciding whether to certify a question we consider: (1) the absence of authoritative state court decisions; (2) the importance of the issue to the state; and (3) the capacity of certification to resolve the litigation. *Morris*, 445 F.3d at 531. We now turn to an analysis of these considerations.

As noted above, no New York case addresses explicitly the conditions under which a zoning regulation imposed through a subdivision plat is enforceable against a subsequent purchaser. In approving the 1963 Plat the Town Planning Board stated that it was acting

---

[7] We note that district courts do not have the authority to certify questions to the New York Court of Appeals.

8

pursuant to the authority of section 276 of New York Town Law which provides that:

> [f]or the purpose of providing for the future growth and development of the town and affording adequate facilities for the housing, transportation, distribution, comfort, convenience, safety, health and welfare of its population, the town board may, by resolution, authorize and empower the planning board to approve preliminary and final plats of subdivisions . . . .

N.Y. Town Law § 276(1). Under section 276 the final approved subdivision plat must be filed by the owner of the subdivision "in the office of the county clerk or register." *Id.* § 276 (11). This requirement is echoed in section 334 of New York Real Property Law which states that it "shall be the duty of every person or corporation who . . . subdivides real property . . . for the purpose of offering such lots, plots, blocks or sites for sale to the public, to cause a map thereof . . . to be filed in the office of the county clerk." N.Y. Real Prop. Law § 334(1). While it is clear that the process of approving and filing the 1963 Plat complied with both of the relevant statutory sections, neither section addresses whether a subdivision plat is enforceable against subsequent purchasers. This silence is particularly notable when contrasted with New York law in other land use contexts that requires restrictions to be recorded in order to be enforceable against subsequent purchasers. *See, e.g.,* N.Y. Gen. Mun. Law § 247(4); N.Y. Real Prop. Law § 291; N.Y. Envtl. Conserv. Law § 49-0305(4).[8] Because we have not found any cases or New York statutes which clearly answer this question, we conclude that this is an area in which there is no authoritative New York law. Thus, this consideration favors certification.

Turning to the second consideration, the question of when subdivision restrictions are

---

[8] We note that these laws appear to govern private agreements rather than restrictions imposed by government through legislative enactment. *Cf. Friends of Shawangunks, Inc. v. Knowlton*, 64 N.Y.2d 387, 392 (1985) (distinguishing between zoning ordinances and private agreements such as easements and covenants).

9

enforceable against subsequent purchasers is an important issue for New York. According to *amicus curiae* the Association of Towns of the State of New York, regulations imposed through the subdivision process are "essential tool[s] for effective growth management within a municipality." Given the widespread use of the subdivision process as a regulatory tool, any decision in this area could have significant practical consequences for how New York's cities, towns, and villages manage growth.[9] Moreover, given the broad range of purposes subdivision regulations can serve under section 276 of New York Town Law, *see* N.Y. Town Law § 276(1), there is reason to believe other important municipal functions would be affected as well. Thus, this consideration also favors certification.

Finally, the resolution of this question will resolve the state law claim in issue in this appeal: the O'Maras' claim for a declaratory judgment that they own Parcels B and E free and clear of the open space requirement. Because all three considerations favor certification, we conclude that it is appropriate to certify the following question to the New York Court of Appeals:

(1)    Is an open space restriction imposed by a subdivision plat under New York Town Law § 276 enforceable against a subsequent purchaser, and under what circumstances?

The New York Court of Appeals may, of course, reformulate or expand upon this question as it wishes. We have greatly benefitted on many occasions from the guidance of the New York Court of Appeals, *see, e.g., King v.* Fox, 458 F.3d 39, 40 (2d Cir. 2006) (per curiam);

---

[9] Indeed, we recognize that other state statutes also empower localities to regulate subdivision land use through the approval and filing of subdivision plats. *See, e.g.,* N.Y. Village Law § 7-728(11).

*Carney v. Philippone*, 368 F.3d 164, 166 (2d Cir. 2004) (per curiam); *see generally* Judith S. Kaye & Kenneth I. Weissman, *Interactive Judicial Federalism: Certified Questions in New York*, 69 Fordham L. Rev. 373 (2000), and would very much appreciate its view on this matter of state law.

*42 U.S.C. § 1983*

In order to prevail on their Section 1983 claim the O'Maras must show that the Town acted under the color of state law and that they suffered a denial of their constitutional rights. *Annis v. County of Westchester*, 136 F.3d 239, 245 (2d Cir. 1998). The Town does not dispute that it acted under color of state law in denying the certificate of occupancy. The O'Maras claim that the Town's refusal to grant a certificate of occupancy to Donald O'Mara was a violation of their constitutional right to substantive due process. In order to prove that their right to substantive due process was violated the O'Maras must show 1) that they had a valid property interest in the certificate of occupancy and 2) that the Town infringed that interest in an arbitrary or irrational manner. *See Clubside, Inc. v. Valentin*, 468 F.3d 144, 152 (2d Cir. 2006). Because the O'Maras cannot show that they had a valid property interest, their claim must be rejected.

In order for an interest in a particular land-use benefit to qualify as a property interest for purposes of the substantive due process clause a landowner must show a "clear entitlement" to that benefit. *Id.* at 152 (quotation marks omitted). Uncertainty as to the meaning of the applicable law defeats a claim to a clear entitlement. *Id.* at 153. As we explained in *Natale v. Town of Ridgefield*, 170 F.3d 258 (2d Cir. 1999), "in order to establish a federally protectable

11

property interest in a state or local permit for which a plaintiff has applied, the plaintiff must show that, at the time the permit was denied, there was no uncertainty regarding his entitlement to it under applicable state or local law, and the issuing authority had no discretion to withhold it in his particular case." *Id.* at 263 n.1. In *Natale*, we denied Section 1983 relief to plaintiffs who had prevailed on a mandamus claim under state law because their state law claim required "a refined analysis of two state statutes and a state Supreme Court decision, thereby resolving an issue that had been 'a legitimate dispute.'" *Id.* at 264.

The question of law surrounding the enforceability of the open space restriction is as uncertain as the law at issue in *Natale*. Even if the New York Court of Appeals were to conclude that the 1963 plat was unenforceable, the uncertainty that leads us certify this issue means that the O'Maras did not have a "clear entitlement" to a certificate of occupancy and therefore no cognizable property interest that would support a violation of their right to substantive due process.

Because the O'Maras have not shown that they had a cognizable property interest for purposes of the substantive due process clause it is unnecessary to reach the question of whether the Town's actions were arbitrary or irrational. The district court ruling that the Town was liable for damages under 42 U.S.C. § 1983 is reversed.

**III.**

For the reasons set forth above, we certify the question of state law at the heart of this litigation to the New York Court of Appeals and reverse the district court's disposition of the

12

O'Maras' federal claims. The February 22, 2006 final order and judgment is **REVERSED** in part and a question is **CERTIFIED** to the New York Court of Appeals.

It is hereby **ORDERED** that the Clerk of the Court transmit to the Clerk of the New York Court of Appeals a Certificate in the form attached, together with a copy of this opinion and a complete set of the briefs, appendices, and record filed by the parties in this Court. This panel will retain jurisdiction to decide the case once we have had the benefit of the views of the New York Court of Appeals, or once that court declines certification. Finally, we order the parties to bear equally any fees and costs that may be requested by the New York Court of Appeals.