THE STATE OF CONNECTICUT *vs.* WILLIAM ANGUS ET AL.

First Judicial District, Hartford, March Term, 1910.

HALL, C. J., PRENTICE, THAYER, RORABACK and ROBINSON, Js.

A Special Act (15 Special Laws, p. 564, § 7) authorized State building commissioners to purchase or condemn such additional lands as they might deem necessary "adjoining or adjacent to those already purchased as a site for said building, located" within the limits of a described city block which contained the building site. *Held:*—

1. That it was apparent from the purpose and language of the Act as a whole that the lands open to purchase or condemnation were not confined to those which actually touched the building site at some point, as the defendant contended, but embraced all the lands within the limits of the designated block, although such employment of the word "adjoining" might not perhaps be strictly etymological.

2. That a purchase of a portion of the defendant's land did not exhaust the powers of the commissioners, nor prevent them from subsequently condemning such other parts or parcels thereof, or any other lands within said block, as they might find to be necessary as additions to the site.

Argued March 1st—decided March 15th, 1910.

APPLICATION for the appointment of a committee to assess just damages to the defendant for the taking of his land for public use, brought to and heard by the Superior Court in Hartford County, *Case, J.,* upon a demurrer to the special defense of the answer; the court sustained the demurrer and rendered judgment for the plaintiff, from which the defendant appealed. *No error.*

Section 7 of a Special Act of the General Assembly passed at its January session, 1907, and approved July 30th, 1907, reads as follows (p. 564): "The commission appointed by the governor under the resolution of the general assembly, approved June 18, 1903, providing for a commission to make repairs on the capitol and to procure a site for a new building for state officials, namely: Morgan G. Bulkeley of Hartford, H. Wales Lines of Meriden, Willie O. Burr of Hartford, L. W. Robinson of New Haven, and Charles C. Cook of West Hartford, and continued by resolution approved July 18, 1905, are continued as a board of commissioners for the state of Connecticut, and the comptroller of the state shall be a member of said commission, *ex officio*, with ample powers to contract for and fully complete, construct, erect, and furnish in the city of Hartford a building suitable for the use of the state as a state library, supreme court room, and memorial hall, also to contract for interior alterations and fireproofing of the roof and upper stories of the present state capitol building, except as already constructed, on plans adopted and now on file in the office of the comptroller, and all at an expense of one million five hundred thousand dollars, or so much thereof as may be necessary. Said board of commissioners is hereby authorized to purchase such additional lands as said commissioners may deem necessary adjoining or adjacent to those already purchased as a site for said building, located on the south side of Capitol avenue between Washington and Oak streets, on the west side of Washington street between Capitol avenue and Russ street, and on the east side of Oak street between Capitol avenue and Russ street and adjoining lands now owned by the state, and in case it is unable to agree with the owners of such properties as are required for this purpose, it is authorized through the attorney-

general to condemn the same in the name of and on behalf of the state of Connecticut, and in the event that the attorney-general shall find it necessary hereafter to institute proceedings in the name of the state to condemn such lands, including the fee, he shall proceed in manner and form as is provided in sections 4103 and 4104 of the general statutes."

The complaint alleged that pursuant to said section the commissioners, deeming it necessary to acquire the land in question as an addition to the site for the building mentioned in the Act, and being unable to agree with the defendant as to the amount to be paid him therefor, on September 10th, 1909, voted to take and acquire the land, describing it as bounded on two sides, and partly on the third, by land of the State.

The answer alleged that on the 30th day of July, 1907, when the Act was approved, the land in question did not adjoin the site then owned by the State, but was separated from it by other land, which was subsequently, on the 30th day of September, 1907, acquired in behalf of the State by the commissioners by purchase. A plan showing the location and ownership on July 30th, 1907, of the different lots of land included by the four streets mentioned in said § 7, was made part of the answer. It thereby appeared that the defendant at that date owned the land extending westerly from the State's building site to Oak Street, that this land was divided into at least three building lots, and that one of these intervened between the State's site and the lot now in question.

*Arthur L. Shipman* and *Charles Welles Gross*, for the appellant (defendant).

*Marcus H. Holcomb,* Attorney-General, for the appellee (plaintiff).

THAYER, J. The only question raised by the demurrer is whether the defendant's land has been properly condemned and taken by the State for the purposes indicated in the Special Act which is recited in the complaint. The defendant claims that it has not been, and that, consequently, upon the authority of *New York, N. H. & H. R. Co.* v. *Long,* 69 Conn. 424, 437, 37 Atl. 1070, the court had no jurisdiction to appoint a committee to assess damages to the defendant, as asked for in the prayer for relief.

The complaint alleges that this land was taken pursuant to the Act on September 10th, 1909. It was then bounded upon two sides, and upon a portion of the third side, by land owned by the State. The answer shows, and the demurrer must be taken to admit, that on July 30th, 1907, when the Act referred to went into effect, this land was separated from the original building site by a lot of land then owned by and subsequently purchased from the defendant by the State. The claim is that the only land which the commissioners were authorized by the Act to purchase or take for the State was land adjoining land then owned by the State; that "adjoining" means touching or contiguous, as distinguished from lying near or adjacent, and that as the lot of land now in question did not actually touch or adjoin the land then owned by the State and referred to in the Act, the commissioners had no power originally under the Act to purchase it or take it by condemnation proceedings; and that if they had such power originally, they had exhausted their power by electing, in September, 1907, to take the intervening land without taking that now in question, so that when they attempted to take the present parcel they had no power to do so.

It is doubtless true that "the word 'adjoining,' when used in its etymological sense, means touching or con-

tiguous, as distinguished from lying near or adjacent."
But if we were to adopt the defendant's construction of
the Act, how much of his land could have been taken?
Very little of it was in contact with the original build-
ing site. He concedes, however, that all the land in the
lot next to the site is to be considered as adjoining it.
But if all the land included in this lot was adjoining
land, why was not all the land included in his three
lots between the site and Oak Street adjoining land?
The Act speaks of lands, not of lots, adjoining the
building site.

But this inquiry need not be further pursued, for the
Act makes it clear that the legislature did not intend
to limit the commissioners' powers to taking lots im-
mediately adjoining the original site. They are "au-
thorized to purchase such additional lands" as they
"may deem necessary adjoining or adjacent to those
already purchased as a site for said building." "Ad-
jacent" means lying near, neighboring. The Act then
proceeds, "located on the south side of Capitol Avenue
between Washington and Oak streets, on the west side
of Washington Street between Capitol Avenue and
Russ Street, and on the east side of Oak Street between
Capitol Avenue and Russ Street and adjoining lands
now owned by the state." All lands located within
the block in which the building site was situated, which
is bounded by the four streets named, are thus indicated
as the adjoining lands from which additions to the site
could be made. The legislature having indicated what
it intended by adjoining lands, it would be unimpor-
tant, if true, that some of the words employed are not
used in their strict etymological sense.

The Act manifestly contemplated that it might be
necessary to acquire various parcels of land, situated
within the boundaries mentioned, from their various
owners. Such purchases could not be made as a single

The State *v.* Angus.

transaction. Some would necessarily have to precede others. To hold that the purchase or taking of the first parcel exhausted the power of the commissioners so that they could take no others, would defeat the purpose of the Act. Clearly a single act of taking was neither prescribed nor contemplated, but it was intended that the commissioners should from time to time acquire such lands as they should deem necessary, limited by the amount of funds available from the appropriation after the construction of the building was provided for. No element of election entered into their powers. They are not called upon to choose between any two parcels of land, but may continue to take such different parcels until all that they may deem necessary have been acquired, or the appropriation shall be exhausted. Such a power is a continuing one, and is not exhausted by a single exercise of it. The commissioners had the power to take the land in question originally, and had not exhausted their powers by the taking of other lands prior to the taking of this. The demurrer was properly sustained, and there was no error in the judgment complained of.

There is no error.

In this opinion the other judges concurred.