[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.]
MEMORANDUM OF DECISION
The defendant Town of Westport applied to the defendant Planning and Zoning Commission of the Town of Westport ("commission") for a special permit and site plan approval for a windrow composting[1] facility on property owned by the town. The town proposed to use the site for the composting of leaves, grass clippings, brush and other yard waste accummulated [accumulated] by the town and its residents and for the storing and chipping of brush for municipal and residential use. The property is situated in an AAA residential zone off of North Avenue in the vicinity of Staples High School.[2]
The commission granted the application for a special permit and for site plan approval. The plaintiffs Joseph N. Mimms and Kathryn H. Mimms have appealed, claiming that the commission acted illegally and in abuse of its discretion because (1) the town failed to apply to the Conservation Commission for a permit to conduct a "regulated activity"; (2) the town failed to submit certain documents and reports required by the zoning regulations; and (3) the commission failed to consider the standards prescribed by the regulations for the CT Page 5732 consideration of special permits. The court finds that the commission did not act illegally or in abuse of its discretion. Accordingly, the appeal is dismissed.
 I. A.
General Statutes 8-8(b) provides, with certain exceptions not pertinent here, that "any person aggrieved by any decision of a board may take an appeal to the superior court. . . ." "`Board' means . . . combined planning and zoning commission" as here. General Statutes 8-8(a)(2). By statutory fiat, an "`aggrieved person' includes any person owning land that abuts or is within a radius of one hundred feet of any portion of the land involved in the decision of the board." General Statutes 8-8(a)(1). The evidence establishes that the plaintiffs Mimms own property that abuts or is within 100 feet of the land involved in the board's decision. Accordingly, they are statutorily aggrieved and may maintain this appeal. See McNally v. Zoning Commission, 225 Conn. 1, 5-8, 621 A.2d 279
(1993); Caltabiano v. Planning Zoning Commission, 211 Conn. 662,560 A.2d 975 (1989); Smith v. Planning Zoning Board,203 Conn. 317, 321, 524 A.2d 1128 (1987); Point O'Woods Assn. Inc. v. Zoning Board of Appeals, 178 Conn. 364, 366, 423 A.2d 90
(1979); Tazza v. Planning Zoning Commission, 164 Conn. 187,190, 319 A.2d 393 1972); Nick v. Planning Zoning Commission,6 Conn. App. 110, 112-113, 503 A.2d 620 (1986).
 B.
George and Cheryl Subkoff, together with the plaintiffs Mimms, have filed a "verified pleading pursuant to Section 22a-19 of the Connecticut General Statutes." General Statutes 22a-19(a) in part provides:
 "In any administrative, licensing or other proceeding, and in any judicial review thereof made available by law. . ., any person . . . may intervene as a party on the filing of a verified pleading asserting that the proceeding or action for judicial review involves conduct which has, or which is reasonably likely to have, the effect of unreasonably polluting, impairing or CT Page 5733 destroying the public trust in the air, water or other natural resources of the state."
the verified pleading filed by the Mimms and the Subkoffs alleges, inter alia, that "[t]he construction and operation of a windrow composting waste facility on the subject property will have the effect of unreasonably polluting, impairing or destroying the public trust in the air, water or other natural resources of the state by: a. causing the release into the ambient air of large amounts of spores, specifically Asperillus Fumigatus, which will result in health risks to the environment; b. causing the release into the ambient air of large amounts of spores, specifically Asperillus Fumigatus, which will result in health risks to individuals; c. causing the release of leachate into surface water which will result in the unreasonable pollution of surface water supplies; and d. causing the release of leachate in groundwater which will result in the unreasonable pollution of groundwater supplies."
The defendants initially did not object to the intervention by the Subkoffs, conceding that since they had "signed a verified pleading which alleges that a composting facility at the Nike Site will have the effect of unreasonable polluting, impairing or destroying the public trust in the air, water and other natural resources of the State . . . the Subkoffs appear eligible to intervene for the narrow and strictly limited purpose of addressing environmental issues provided under the statute." However, in oral argument before the court, the defendants appeared to withdraw this concession, arguing that the verified pleading did not assert that the proposed composting operation was "reasonably likely to have the effect of unreasonably polluting, impairing or destroying the public trust in the air, water or other natural resources of the state." General Statutes 22a-19(a). Rather, the defendants now claim that the verified pleading alleges only that the composting operation will result in adverse health effects. This claim is without merit. The verified pleading, quoted supra, tracks the language of the statute. That the plaintiffs' verified pleading also states how the claimed deleterious effects on the air and water will result in health risks does not diminish the facial compliance of the pleading with 22a-19.
The verified pleading of the Subkoffs and the CT Page 5734 plaintiffs Mimms complies with the requirements of General Statutes 22a-19(a). That statute provides that a person "may intervene as a party on the filing of a verified pleading" containing the required assertions. The statute does not require an accompanying motion. A person is deemed to have intervened as of right upon the filing of a proper verified pleading; the matter does not rest with the discretion of the court. Cf. Hallenbeck v. St. Mark The Evangelist Corporation,29 Conn. App. 618, 623-26, 616 A.2d 1170 (1992). Accordingly, the court deems the Subkoffs to have intervened pursuant to General Statutes 22a-19(a).[3] While the Subkoffs' participation must be limited to their raising environmental issues; Red Hill Coalition, Inc. v. Town Plan Zoning Commission, 212 Conn. 727,734, 563 A.2d 727 (1989): for convenience, reference herein to the "plaintiffs" is deemed to be to both the Mimms and to the Subkoffs.
 II.
Next, the plaintiffs have moved to remand this appeal to the defendant commission pursuant to General Statutes22a-18(b) "for consideration of the environmental issues raised by the intervenors in their verified pleading. . . ." Section 22a-18(b) of the General Statutes provides:
 "If administrative licensing or other such proceedings are required or available to determine the legality of the defendant's conduct, the court in its discretion may remand the parties to such proceedings. In so remanding the parties the court may grant temporary equitable relief where necessary for the protection of the public trust in the air, water and other natural resources of the state from unreasonable pollution, impairment or destruction and the court shall retain jurisdiction of the action pending completion of administrative action for the purpose of determining whether adequate consideration by the agency has been given to the protection of the public trust in the air, water or other natural resources of the state from unreasonable pollution, impairment or destruction and whether the agency's decision is supported CT Page 5735 by competent material and substantial evidence on the whole record."
Assuming that General Statutes 22a-18(b) provides for a remand to a zoning board in the course of a zoning appeal by "the court in its discretion," it is clear that the text of the statute provides no guide as to the criteria by which that discretion may be exercised. The Administrative Procedure Act, however, does provide such criteria. General Statutes 4-183(h) provides:
 "If, before the date set for hearing on the merits of an appeal, application is made to the court for leave to present additional evidence, and it is shown to the satisfaction of the court that the additional evidence is material and that there were good reasons for failure to present it in the proceeding before the agency, the court may order that the additional evidence be taken before the agency upon conditions determined by the court. The agency may modify its findings and decision by reason of the additional evidence and shall file that evidence and any modifications, new findings, or decisions with the reviewing court."
"Utilizing this statute as a source of law for application by analogy to the present case, we find ourselves on untraveled but well-chartered waters. See, e.g., Landis, `Statutes and the Sources of Law,' Harvard Legal Essays (1934). `It is when the colors do not match, when the references in the index fail, when there is no decisive precedent, that the serious business of the judge begins.' Cardozo, The Nature of the Judicial Process, p. 21 (1921). `Statutes are now central to the law in the courts, and judicial lawmaking must take statutes into account virtually all of the time. . . . Hardly ever is a statute now regarded as a candidate for narrow construction because it may be in derogation of the common law. More often, the issue is rather to what extent a statute is itself a source of policy for consistent common law development.' [Footnote omitted; emphasis by the court.] Peters, `Common Law Judging in a Statutory World: An Address,' 43 U.Pitt. L. Rev. 995, 998 (1982); see generally Calabresi, A Common Law for the Age of CT Page 5736 Statutes (1982). We find General Statutes [4-183(h)] to be a sound and effective `source of policy for consistent common law development.' Peters, supra. As our Chief Justice has aptly noted: `[w]e need to learn how to think about statutes by analogy as aggressively and as extensively as we presently think about cases by analogy.' Id., 1002." Canton Motorcar Works, Inc. v. DiMartino, 6 Conn. App. 447, 453-54, 505 A.2d 1255
(1986), cert. den., 200 Conn. 802, 509 A.2d 516 (1986); see 2B Sutherland Statutory Construction (5th Ed.) 55.01.
General Statutes 4-183(h) does not apply to appeals from a local zoning board if only because such a board is not a state "agency" as defined by the Administrative Procedure Act. See General Statutes 4-166(1). It is readily apparent, however, that a request for a remand to such a board pursuant to General Statutes 22a-18(b) for the taking of additional evidence is closely analogous to an application for leave to present additional evidence pursuant to General Statutes4-183(h). Cf. Blaker v. Planning Zoning Commission,219 Conn. 139, 146, 592 A.2d 155 (1991) [suggesting that the standard for determining whether to take additional evidence in a zoning appeal is the same standard prescribed in the Administrative Procedure Act by General Statutes 4-183(i)]. Since 22a-18(b) lacks criteria by which the court is to exercise its discretion in determining whether to remand for the taking of additional evidence, the criteria in 4-183(h) may be employed. Cf. Howard County v. Davidsonville Area Civic Potomic River Associations, Inc., 72 Md. App. 19, 527 A.2d 772,786 (1987), cert. den. sub nom. St. Mary's Watermen's Assn. v. Howard County, 311 Md. 286, 533 A.2d 1308 (1987).
The first criteria in General Statutes 4-183(h) for determining whether additional evidence may be adduced is whether that evidence is material. Neither in their motion to remand nor in their memorandum of law in support of their motion do the plaintiffs specifically state exactly what evidence they wish to adduce before the commission on remand. In their memorandum of law the plaintiffs simply "request that this zoning appeal be remanded to the PZC [sic] for the purpose of having the PZC [sic] take evidence relative to the environmental issues raised by the intervenors in their verified pleading." In oral argument to the court the plaintiffs' counsel represented that the evidence which the plaintiffs wished to adduce was medical testimony corroborating the environmental claims raised by the plaintiffs in the verified CT Page 5737 pleading, quoted supra. While a medical doctor may be qualified to testify as to the affects on persons of the spores which the plaintiffs claim will be emitted by the windrow composting facility, it is far less clear that such a physician would be qualified to testify that such a facility would emit such spores in such a quantity as to result in a health risk to persons. See, e.g. State v. Douglas, 203 Conn. 445, 449-450, 525 A.2d 101
(1987) (physical anthropologist not competent to give opinion as to identity of person in photograph because he was not a photography expert). The court will not, at this juncture, presume to rule on the admissibility of evidence before a local land-use commission which "is not bound by the strict rules of evidence." Parsons v. Board of Zoning Appeals, 140 Conn. 290,292, 99 A.2d 149 (1953), questioned on other grounds, Ward v. Zoning Board of Appeals, 153 Conn. 141, 146, 215 A.2d 104
(1965). Since the proposed evidence directly relates to the allegations in the plaintiffs' verified pleading, which the court has found to comply with the requirements of General Statutes 22a-19(a), that evidence is material. "Materiality looks to the relation between the propositions for which the evidence is offered and the issues in the case." McCormick on Evidence (3d Ed. 1984) 185; see also Ballentine's Law Dictionary, p. 782.
The second criteria for remanding a case to an administrative agency for additional evidence pursuant to General Statutes 4-183(h) is that it is "shown to the satisfaction of the court . . . that there were good reasons for failure to present [the evidence] in the proceedings before the agency." Again, neither the plaintiffs' motion nor their supporting memorandum of law states why the evidence sought to be introduced on remand was not introduced at the hearing before the commission. Before the court, plaintiffs' attorney claimed that the plaintiffs did not have a sufficient opportunity between the time when notice of the public hearing on the application for a special permit and site plan approval was given and the convening of that public hearing in which to obtain the evidence sought to be introduced on remand.
General Statutes 8-3c(b) provides that a public hearing must be held on an application for a special permit. That statute further provides:
 "Notice of the time and place of such hearing shall be published in a newspaper CT Page 5738 having a substantial circulation in such municipality at least twice, at intervals of not less than two days, the first not more than fifteen days, nor less than two days, and the last not less than two days before the date of such hearing."
Here, the commission gave notice by publication in the Westport News of a hearing on the application for a special permit and site plan approval to be held on September 23, 1991 at 8:00 p.m. The notices appeared in the Westport News on September 11, 1991 and September 18, 1991. It appears that that hearing did not take place, although it was placed on the commission's agenda for September 23, 1991. (A fair inference is that two other matters on the commission's agenda consumed the available time that evening.) The public hearing on the town's application was held on October 21, 1991. That hearing was duly noticed in the Westport News on October 9, 1991 and October 16, 1991. Thus, the plaintiffs had, at least, from September 11 when the first notice was published, to October 21, when the hearing actually occurred, within which to marshall their evidence.
The plaintiffs have not "shown to the satisfaction of the court . . . that there were good reasons for failure to present [the evidence] in the proceedings before the" commission. Firstly, the plaintiffs have made no "showing" that they did not have sufficient time and opportunity to present the evidence for which they seek a remand. In matters of substance such as this, a "showing" requires evidence, not merely assertions of counsel. Pantlin Chananie Development Corp. v. Hartford Cement Building Supply Co., 196 Conn. 233, 241, 492 A.2d 159
(1985) (motion to open and set aside judgment pursuant to General Statutes 52-212). "[R]epresentations of the plaintiffs' counsel are not `evidence' and certainly not `proof.'" Cologne v. Westfarms Associates, 197 Conn. 141, 153,496 A.2d 476 (1985); see Pet v. Department of Health Services,207 Conn. 346, 363 n. 10, 542 A.2d 672 (1988): State v. Roman,224 Conn. 63, 68, 616 A.2d 266 (1992); State v. Tillman,220 Conn. 487, 496, 600 A.2d 738 (1991), cert. den., ___ U.S. ___,112 S.Ct. 3000, 120 L.Ed.2d 876 (1992); New Haven v. Freedom of Information Commissioner, 205 Conn. 767, 776, 535 A.2d 1297
(1988); State v. O'Brien, 29 Conn. App. 724, 732, 618 A.2d 50
(1992), cert. den., 225 Conn. 902, 621 A.2d 285 (1993); State v. Hanna, 19 Conn. App. 277, 278, 562 A.2d 549 (1989); State v. Weber, 6 Conn. App. 407, 413, 505 A.2d 1266 (1986), cert. den., CT Page 5739199 Conn. 810, 508 A.2d 771 (1986). "It is well settled that representations of counsel are not, legally speaking, `evidence.' [Citations omitted.]." Cologne v. West Farms Associates, supra, 154; see Savage v. Savage, 25 Conn. App. 160,172, 580 A.2d 520 (1990), cert. den., 216 Conn. 831,583 A.2d 130 (1990), cert. den., ___ U.S. ___, 111 S.Ct. 1635,113 L.Ed.2d 731 (1991): State v. Carsetti, 12 Conn. App. 375, 379,530 A.2d 1095 (1987), cert. den., 205 Conn. 809, 537 A.2d 77
(1985).[4]
Secondly, it is significant that both George J. Subkoff and Cheryl Subkoff spoke before the commission. Cheryl Subkoff discussed environmental and health concerns. The plaintiff Joseph Mimms submitted a written statement to the commission albeit on behalf of the Staples Area Residents Association. That statement, too, discussed environmental and health matters. Notably, neither Mr. Mimms nor the Subkoffs requested or suggested that the hearing be continued to allow the introduction of additional evidence relevant to environmental issues. Under General Statutes 8-7d(a) and43-5.3 of its regulations, the commission could have adjourned or continued the October 21, 1991 hearing so long as it was "completed within thirty days after such hearing commence[d]."
Thirdly, it is noteworthy that there was evidence before the commission as to potential pollution of the water and air. The Director of the Conservation Commission wrote: "A compost operation can produce nitrogen and similar organic compounds as by-products. Such organic compounds act as nutrients in an aquatic system and contribute to algae growth." Both Joseph Mimms and Cheryl Subkoff gave evidence that the compost operation would pollute the air with leaf mold. This evidence was buttressed by testimony from Dr. Martin Floch, M.D., a clinical professor of medicine at Yale University.
Since the plaintiffs have failed to show to the satisfaction of the court that there were good reasons for their failure to present to the commission the evidence for which they seek to remand this case, their motion for a remand is denied.[5]
 III. A.
Before turning to the merits of the plaintiffs' CT Page 5740 claims, it is well to observe the standard of review which the court must observe in examining the action of the commission in granting a special permit and site plan approval. Under the regulations, site plan documents must be submitted as part of a special permit application. Zoning Regulations 44-1 to 44-4. Accordingly, the two are inseparable. SSM Associates Limited Partnership v. Plan Zoning Commission, 211 Conn. 331,559 A.2d 196 (1989). Indeed, under the regulations, "[i]n reviewing a special permit application, the Commission shall consider all the standards contained in Sec. 44-5, Site Plan Standards and Objectives," as well as the standards and objectives specifically prescribed for special permits. Zoning Regs. 44-6. "When considering an application for a special [permit], a zoning authority acts in an administrative capacity, and its function is to determine whether the proposed use is expressly permitted under the regulations, and whether the standards set forth in the regulations and statutes are satisfied. A. P. W. Holding Corporation v. Planning Zoning Board, 167 Conn. 182,185, 355 A.2d 91 (1974). It has no discretion to deny the special [permit] if the regulations and statutes are satisfied. Westport v. Norwalk, 167 Conn. 151, 155, 355 A.2d 25 (1974)." Daughters of St. Paul, Inc. v. Zoning Board of Appeals, 17 Conn. App. 53,56, 549 A.2d 1076 (1988). In reviewing the action of a board on a special permit, "[c]ourts are not to substitute their judgment for that of the board . . . and decisions of local boards will not be disturbed so long as honest judgment has been reasonably and fairly exercised after a full hearing. . . . Upon appeal, the trial court reviews the record before the board to determine whether it has acted fairly or with proper motives or valid reasons. (Citations omitted.) Whittaker v. Zoning Board of Appeals, 179 Conn. 650, 654, 427 A.2d 1346 (1980). Since the credibility of witnesses and the determination of factual issues are matters within the province of the administrative agency; Feinson v. Conservation Commission, 180 Conn. 421, 425,429 A.2d 910 (1980); the court must determine the correctness of the conclusions from the record on which they are based. Housatonic Terminal Corporation v. Planning Zoning Board, 168 Conn. 304,306, 362 A.2d 1375 (1975). The record includes knowledge acquired by board members through personal observation. Burnham v. Planning Zoning Commission, 189 Conn. 261, 267,455 A.2d 339 (1983)." (Internal quotation marks omitted.) Torsiello v. Zoning Board of Appeals, 3 Conn. App. 47, 49-50, 48 A.2d 483
(1984). "The decision of the zoning authority will only be disturbed if it is shown that it was arbitrary, illegal or an abuse of discretion." Id., 50. With the exception of CT Page 5741 "affordable housing land use appeals"; General Statutes 8-30g
et seq.; that is the role to which the judiciary is limited in statutory appeals from local land use boards and commissions.
 B.
In their appeal, the plaintiffs' first substantive claim is that the commission acted illegally in approving the town's application because the town failed to file an inland wetlands application in violation of General Statutes 8-3(g),8-3c.
In connection with its process of reviewing the town's application, the defendant commission referred that application, or parts of it, to various municipal departments for comment. A referral was made to the Conservation Commission,[6] together with the "Map Showing Existing Conditions and Proposed Composting Site. . . ." In a responding memo to the planning and zoning commission, the director of the Conservation Commission reported that "[p]ermits from the Conservation Commission are not required for the proposed composting site on the basis that the property does not contain wetlands, water courses or waterways regulated pursuant to the Wetlands Regulations . . . and the Waterway Protection Lines Ordinance. Neither is the land located within the Coastal Zone, or over an aquifer, according to review of our resources maps."
However, in her memo the conservation director also stated:
 "As shown on the plans, a drainage swale exists on each side of the paved right-of-way entering the property, which is connected to the public storm drainage system. This drainage discharges into Dead Man's Brook, north of the site. A composting operation can produce nitrogen and similar organic compounds as by-products. Such organic compounds act as nutrients in an aquatic system and contribute to algae growth. Therefore, our concerns are directed toward preservation or improvement of the quality of runn [run] off that would enter the drainage system from this site and eventually discharge into Dead CT Page 5742 Man's Brook."
The Conservation Commission Director then recommended three measures that would improve the quality of run-off.
General Statutes 8-3(g) provides in pertinent part:
 "If a site plan application involves an activity regulated pursuant to sections 22a-36 to 22a-45, inclusive, the applicant shall submit an application for a permit to the agency responsible for administration of the inland wetlands regulations not later than the day such application is filed with the zoning commission. The decision of the zoning commission shall not be rendered on the site plan application until the inland wetlands agency has submitted a report with its final decision. In making its decision the zoning commission shall give due consideration to the report of the inland wetlands agency." (Emphasis added.)
General Statutes 8-3c(a)(b) contains a similar requirement for special permits.[7] See Arway v. Bloom, 29 Conn. App. 469,472-73, 615 A.2d 1075 (1992), cert. granted, 224 Conn. 924-925,618 A.2d 531 (1993). The defendant town did not submit an application for a permit to the Conservation Commission and, accordingly, that commission did not submit "a report with its final decision" to the planning and zoning commission. For this reason, the plaintiffs claim that the decision of the planning and zoning commission was illegal. The defendants counter that the composting operation was not "an activity regulated pursuant to sections 22a-36 to 22a-45, inclusive. . . ."
Sections 22a-36 to 22a-45 are designated as "The Inland Wetlands and Watercourses Act" [IWWA]. General Statutes22a-37. Nowhere in those statutes are the words "activity regulated" used, much less defined. As used in General Statutes8-3(a), 8-3c, the words "activity regulated" is ambiguous and, accordingly, resort must be made to the rules of statutory construction. Dukes v. Durante, 192 Conn. 207, 214,471 A.2d 1368 (1984). "The IWWA provides that `no regulated activity shall be conducted upon any inland wetland or watercourse without a permit.' General Statutes 22a-42a(c)." Lizotte v. CT Page 5743 Conservation Commission, 216 Conn. 320, 331, 579 A.2d 1044
(1990). General Statutes 22a-38(13) does define "[r]egulated activity" to mean "any operation within or use of a wetland or watercourse involving removal or deposition of material or any obstruction, construction, alteration or pollution, of such wetlands or watercourses, but shall not include the specified activities in section 22a-40" permitted as of right. "Statutes are to be construed consistently with other relevant statutes because we presume that the legislature intended to create a coherent body of law." In re Valerie D., 223 Conn. 492, 533,613 A.2d 748 (1992). Therefore, the court reads "activity regulated" in General Statutes 8-3(g), 8-3c as meaning "regulated activity" pursuant to General Statutes 22a-36 to22a-45 since the former statutes make express mention of the latter and because no other construction is reasonable.
This definition of "regulated activity" and the other definitions in 22a-38 govern the interpretation of General Statutes 22a-36 to 22a-45; Weinberg v. ARA Vending Co.,223 Conn. 336, 349, 612 A.2d 1203 (1992) (definition of word contained in statute binding on courts); Neptune Park Assn. v. Steinberg, 138 Conn. 357, 362, 84 A.2d 682 (1952) (definition of word contained in zoning regulation binding on courts); and are binding on the Commissioner of Environmental Protection, subject to his interpretive regulations. See Regs. Conn. State Agencies22a-39-1, et seq. However, the commissioner's jurisdiction over land use applications involving inland wetlands and watercourses has generally been limited to "application[s] for a license or permit for any proposed regulated activity conducted by any department, agency or instrumentality of the state, except any local or regional board of education. . . ."; and to "application[s] for a license or permit for any proposed regulated activity within a municipality which does not regulate its wetlands and watercourses." General Statutes22a-39(h), (i). Since 1987, it has been "the public policy of the state to require municipal regulation of activities affecting the wetlands and watercourses within the territorial limits of the various municipalities and districts." (Emphasis added.) General Statutes 22a-42(a); see Mario v. Fairfield,217 Conn. 164, 168-169, 585 A.2d 87 (1991). In furtherance of this public policy, local inland agencies
 "shall through regulation provide for (1) the manner in which the boundaries of inland wetland and watercourses areas in their CT Page 5744 respective municipalities shall be established and amended or changed, (2) the form for an application to conduct regulated activities, (3) notice and publication requirements, (4) criteria and procedures for the review of applications and (5) administration and enforcement."
General Statutes 22a-42a(a). The authority of a local inland wetlands agency may be revoked by the Commissioner of Environmental Protection if the agency "has, over a period of time, consistently failed to perform its duties. . . ." General Statutes 22a-42d(a).
General Statutes 22a-42(e) provides that such "[m]unicipal or district ordinances or regulations may embody any regulations promulgated [by the Commission of Environmental Protection] hereunder, in whole or in part, or may consist of other ordinances or regulations in conformity with regulations promulgated hereunder. Any ordinances or regulations shall be for the purpose of effectuating the purposes of sections 22a-36
to 22a-45, inclusive, and, a municipality or district, in acting upon ordinances and regulations shall give due consideration to the standards set forth in section 22a-41."
Here the Conservation Commission of the town of Westport has promulgated inland wetland and watercourse regulations which contain their own definition of "regulated activity." The plaintiffs do not challenge the validity of those regulations. See Bombero v. Planning Zoning Commission,218 Conn. 737, 591 A.2d 390 (1991). In such circumstances as these, whether a land use proposal may involve a regulated activity obliging the applicant to submit an application to the local inland wetlands agency, pursuant to General Statutes8-3(g), 8-3c, must be determined by reference to the definition of regulated activity contained in the local inland wetland regulations, rather than by reference to the definition contained in General Statutes 22a-38(13). Were it otherwise, the IWWA and its interface with General Statutes 8-3(g), 8-3c
would be thoroughly unworkable and the policy declared in General Statutes 22a-42(a) would be subverted. A landowner might be required by the IWWA and 8-3(g) or 8-3c to make an application to a local inland wetlands agency for a use which was not a regulated activity under local regulations. Conversely, a landowner might not be required to make such an CT Page 5745 application under the IWWA for a use which was a regulated activity under local regulations. Courts must presume that the legislature did not intend such consequences. Masone v. Zoning Board, 148 Conn. 551, 556, 172 A.2d 891 (1961); Pecora v. Zoning Commission, 145 Conn. 435, 44, 144 A.2d 48 (1958). Accordingly, we turn to the local inland wetlands regulations.
At the time of the town's application to the planning and zoning commission, 7.1 of the Regulations for the Protection and Preservation of Wetlands and Watercourses of Westport, Connecticut provided that except for operations and uses permitted as of right, "regulated activities affecting Wetlands and Watercourses within the Town of Westport are prohibited except as they may be licensed by the Commission." The proposed composting operation clearly is not among the uses or operations permitted as of right under those regulations. Section 3.10 of the regulations defines "[r]egulated activity" to mean "any operation or use, within or adjacent to a Wetland or Watercourse involving removal or deposition of material; or any obstruction, construction, alteration or pollution of such Wetlands and Watercourses, except as otherwise indicated [viz., permitted as of right] in Section 4 of these Regulations." The plaintiffs argue that since the composting operation will generate run off which will enter the sewer system and discharge into a brook there is a "use within . . . a watercourse" and, therefore, a regulated activity.
The word "use" is not defined in the regulation. In such cases the rule is that "words and phrases shall be construed according to the commonly approved usage of the language; and technical words and phrases, and such as have acquired a peculiar and appropriate meaning in the law, shall be construed and understood accordingly." (Emphasis added.) General Statutes 1-1(a); see e.g., Lawrence v. Zoning Board of Appeals, 158 Conn. 509, 511, 264 A.2d 552 (1969). "When a court is called on to give [a word] a specific meaning in order to resolve a particular question of law, it is fundamental that the judicial construction relate to and be consistent with the context in which the word is found." Planning Zoning Commission v. Synanon Foundation, Inc., 153 Conn. 305, 309-310,216 A.2d 442 (1966). It cannot be overlooked that the "Regulations for the Protection and Preservation of Wetlands and Watercourses of Westport, Connecticut" are "land use" regulations. "The word `use' has been the subject of frequent judicial decisions, and it is regarded as one of the most CT Page 5746 comprehensive words in the language. It is a broad word which may be employed in many senses. . . ." 91 C.J.S., Uses, p. 513. However, in planning, zoning and other areas of land regulation, "[t]he term `use' . . . is a word of art denoting `the purpose for which the building is designed, arranged or intended, or for which it is occupied or maintained.' Yokely, Zoning Law and Practice 2-1 at 16 (1978)." Pleasureland Museum, Inc. v. Dailey, 422 N.E.2d 754, 755 (Ind.App. 1981). While the use to which a particular parcel of land is put may have off-site and even distant consequences, such consequences are just that. The use to which land is put and the off-site consequences of that use must be distinguished. In the present case, while the composting operation may well have consequences on a watercourse some distance away, those consequences are not the "use" within the ambit of Wetlands Regs. 3.10.
In oral argument the plaintiffs also suggested that the semicolon in 3.10 sets apart two distinct definitions of regulated activity, (1) "any operation or use within or adjacent to a Wetland or Watercourse involving removal or deposition of material", on the one hand, and (2) "any obstruction, construction, alteration or pollution of such wetlands and watercourses except" for uses permitted as of right, on the other hand. The effect of semicolons is to separate with more distinctiveness than commas. West Hartford v. Thomas D. Faulkner Co., 126 Conn. 206, 210, 211, 10 A.2d 592 (1940). Since some alteration or pollution of Dead Man's Brook may result from the composting operation, such an interpretation would render that operation a "regulated activity." This interpretation is rejected for three reasons.
Firstly, such an interpretation would sequester the exemption for uses permitted as of right, contained at the end of the section, from the first part of the definition. This would not be reasonable and would not comport with the spirit of the ordinance as a whole. "Courts must assume that the legislature intended a reasonable and rational result and must, when possible, construe statutes accordingly." Masone v. Zoning Board, supra.
Secondly, such an interpretation would render the word "such" in the regulation a superfluous, dangling adjective. "Ordinarily, no legislative provision can be regarded as superfluous." Dostmann v. Zoning Board of Appeals, 143 Conn. 297,300, 122 A.2d 19 (1956). "The word `such' has been CT Page 5747 construed as an adjective referring back to and identifying something previously spoken of; the word naturally, by grammatical usage, refers to the last antecedent." LaProvidenza v. State Employees' Retirement Commission, 178 Conn. 23, 27,420 A.2d 905 (1979). Quite clearly, the word "such" in the latter portion of 3.10 refers to the "Wetland or Watercourse" earlier in the section to which "any operation or use" "involving removal or deposition of material" is "within or adjacent."
Thirdly, "punctuation is seldom a highly persuasive factor in statutory construction and will not defeat evident legislative intent." State v. Lohr, 266 N.W.2d 1, 4 (Iowa 1978). As one court has aptly stated:
 In construing statutes, we will not indulge in quibbles over minute points of punctuation; they are among the atomies of grammar. At best, the so-called grammatical stops are widely misunderstood and applied even among average and reasonably well educated laymen, including legislators and, mirabile dictu, even judges. See H. W. Fowler, Modern English Usage, Stops, at 587-92 (2d ed. 1965). "[L]egislatures are not grammar schools; and, in this country at least, it is hardly reasonable to expect legislative acts to be drawn with strict grammatical or logical accuracy. . . . For that reason . . . the construction of a statute should be based on the whole statute." State v. Lynch, 137 Vt. 607, 613, 409 A.2d 1001, 1005 (1979) (citations omitted by the court).
Hill v. Conway, 463 A.2d 232, 234 (Vt. 1983). Accordingly, it is a "familiar rule that punctuation marks may be disregarded when they lead to results inconsistent with the apparent intention of the [legislature] as expressed in the statute itself. . . ." Nubis v. Cornwall, 95 Conn. 720, 723, 112 A. 663
(1921); see Farmington River Co., v. Town Plan Zoning Commission, 25 Conn. Sup. 125, 132, 197 A.2d 653 (1963) (Cotter, J.) (semicolon erroneously inserted in statute).
"A legislative act must be read as a whole and construed to give effect and to harmonize all of its parts." CT Page 5748 (Internal quotation marks omitted.) Hayes v. Smith, 194 Conn. 52,58, 480 A.2d 425 (1984). Reading 3.10 in this manner, the court concludes that the proposed composting operation is not a "regulated activity" as defined in that section because the "operation or use" is not located "within or adjacent to a wetland or watercourse" notwithstanding that some "deposition of material . . . [or] alteration or pollution" of a watercourse some distance away may occur.
The plaintiffs also argue that the proposed composting operation is a regulated activity under 3.10 of the wetlands regulations because that operation will be "adjacent to a . . . watercourse, to wit, Dead Man's Brook." The defendants deny this, yet the parties fail to join issue on the appropriate definition of the word "adjacent." "The term `adjacent' has no fixed meaning but must, instead, be interpreted in light of the relevant surrounding circumstances. Plunkett v. Weddington,318 S.W.2d 885, 887 (Ky. 1958); Grudnosky v. Bistow, 251 Minn. 496,500, 88 N.W.2d 847 (1958). Necessarily relative, the term connotes nonetheless a site which, although not contiguous, will be near to, or in the general vicinity of a stated point of reference. . . ." Welles v. East Windsor, 185 Conn. 556, 560-561,441 A.2d 174 (1981); see State v. Angus, 83 Conn. 137, 141,75 A. 623 (1910) ("`Adjacent' means lying near, neighboring.")
One map in the record does depict a portion of Dead Man's Brook and the proposed site and depicts Dead Man's Brook crossing North Avenue, the same highway which provides access to the proposed composting site. However, the approximate distance between the site and Dead Man's Brook cannot be ascertained from this map, which is a reduced version of an "oversized" document, nor from anything else in the record. It is the plaintiffs' obligation to provide a record adequate to raise a claim of error. McLaughlin v. Bronson,206 Conn. 267, 276, 537 A.2d 1004 (1988); Fernandes v. Zoning Board of Appeals, 24 Conn. App. 49, 56, 585 A.2d 703 (1991) cert. granted, 218 Conn. 909, 591 A.2d 811 (1991).
However, even if the proposed composting operation could be said to be "in the general vicinity" of Dead Man's Brook, it still would not be a "regulated activity." Just as it is "a basic principle of zoning . . . that every owner of property located in a town which has adopted zoning is entitled to be able to ascertain, with reasonable certainty, what uses he may legally make of any portion of his property"; Lebanon v. Woods, CT Page 5749153 Conn. 182, 191, 215 A.2d 112 (1965); so, too, every owner of property is entitled to know whether in putting her property to a use she is subject to the jurisdiction of an inland wetlands and watercourses agency solely because of the location of her property. Defining "adjacent" in 3.10 to mean "near to, or in the general vicinity of a stated point of reference"; Welles v. East Windsor, supra; would subvert that entitlement.
Because the proposed composting operation did not involve a "regulated activity" under the inland wetlands regulations in effect at the time of the decision of the planning and zoning commission, the planning and zoning commission did not act in violation of General Statutes8-3(g), 8-3c.[8]
 C
The plaintiffs next claim that the town failed to submit an archeological report and certain legal documents required by the zoning regulations. Section 44-1 of the zoning regulations provides: "For all uses requiring a Special Permit or Site Plan, a complete application shall be submitted on Westport Planning and Zoning forms together with a fee, payable to the Town of Westport and the following information. If the Planning and Zoning Director finds any of the following requirements not applicable for small scale projects, such items may be waived pursuant to Section 44-4."
1.
With respect to the plaintiffs' claim that the town failed to submit an archeological report, section 44-2.7 provides in relevant part:
 A site investigation report designed to identify historically and archeologically sensitive areas within a specific site shall be required for any Special Permit, any CAM Site Plan within one hundred (100) feet of a watercourse or wetland or any other Site Plan for new or expanded building construction and/or site improvements where the ground will be dug up, regraded or otherwise disturbed, unless the professional CT Page 5750 determines in writing that such investigation is not necessary." (Emphasis added.)
The plaintiffs cannot prevail on this claim for three reasons:
Firstly, this claim was not raised before the commission and does not pertain to any of the criteria expressly mandated by the General Assembly for consideration of a special permit or site plan. Therefore, what the court stated in Chesson v. Zoning Commission, 157 Conn. 520, 527, 254 A.2d 864
(1969) is pertinent here: "If the plaintiffs had raised the issue before the zoning commission, it could properly have refused to accept and act on the petitions. Ball v. Town Plan Zoning Commission, 146 Conn. 397, 402, 151 A.2d 327 (1959). A failure to comply with the condition, however, amounted only to an irregularity which did not destroy the jurisdiction of the zoning commission to act on the petition. If raised in a timely fashion, the defect could readily have been cured. . . . By failing to make timely objection, the plaintiffs have waived their right to attack the petition on the ground now claimed. Turner v. Richardson, 147 Conn. 423, 425, 162 A.2d 177 (1960). `Modern procedural concepts do not favor tardy complaints concerning matters involving no prejudice or injustice which, through inattention or design, have gone unmentioned until too late for correction.' Sinisgalli v. Warden, 153 Conn. 599, 602,219 A.2d 724 (1966)." See also Paige v. Town Plan Zoning Commission, Judicial District of Fairfield, No. 289197,8 Conn. L. Rptr. No. 9, 273, 277 (1993), appeal pending, A.C. 12324.
Secondly, 44-2.7 requires an archeological [archaeological] report only "where the ground will be dug up, regraded or otherwise disturbed. . . ." Nothing in the record reflects that installation or operation of the composting facility will have such consequences. Courts must interpret and apply statutes and regulations as they are written. Glastonbury Co. v. Gillies,209 Conn. 175, 179, 550 A.2d 8 (1988). By its own terms, 44-2.7 is inapplicable to this case.
Thirdly, the Planning and Zoning Director waived the requirement of an archeological [archaeological] report. Section 44-4 of the zoning regulations states:
 "The Planning and Zoning Director may delete or modify in writing any Site Plan document CT Page 5751 requirement specified in 44-1 (Documents) and 44-2 (Other reports and documents) for any small scale project such as change of use, building expansion of 1,000 square feet or less or parking expansion of ten (10) spaces or less and other similar minor modification provided that the information required is unnecessary for the particular application and the lack of such information will not impair or prejudice the Planning and Zoning Commission's determination as to the application's conformity to the Zoning Regulations. Any such deletion or modification shall be noted in the file not less than fourteen (14) days prior to the date of the Public Hearing or Review. . . ." (Emphasis added.)
In a printed document entitled "Waiver of Requirements Pursuant to Section 44.4" the Planning and Zoning Director waived four items required under 44.1 and also waived the archeological report required under 44.2. Her reasons for waiving these items, as stated in that document, were "1) site is existing — no disturbance to existing natural areas is proposed. 2) U.S. Gov't will clean up site, exempt from town zoning regs." While the plaintiffs challenge the validity of the latter reason, they do not challenge the former reason. For this reason, to the extent that the Planning and Zoning Director's waiver may be claimed as error in this appeal, that claim must fail. Sakson Nursery, Inc. v. Planning Zoning Board of Appeals, 30 Conn. App. 627, 629-630, 621 A.2d 768
(1993). Moreover, the plaintiffs do not dispute, and the record reflects, that an archeological report was "unnecessary for the particular application and the lack of such information will not impair or prejudice the Planning and Zoning Commission's determination as to the application's conformity to the Zoning Regulations."[9]
2.
The plaintiffs also claim that "[t]he town failed to submit and the commission failed to consider legal documents as required by Section 44-2.3" of the zoning regulations. That section provides: "The applicant shall EITHER obtain all necessary legal documents or rights such as easements, rights of CT Page 5752 way, articles of association, covenants, deed restrictions, etc., OR otherwise provide sufficient written evidence to demonstrate that the acquisition of all such necessary legal documents or rights appears to have a reasonable probability of success."
Some or all of the subject property, known as the "Nike site," had previously been owned by the United States government and had been used as a "Nike" air defense missile launching area for military defense purposes. This use ceased in the early 1960's. In 1973, the United States government conveyed the property by quitclaim deed to the Town of Westport. One of four conditions subsequent of that conveyance was:
 "That for a period of thirty (30) years from the date of this need the above described property herein conveyed shall be utilized continuously in the manner and for the educational purposes set forth in the approved program and plan contained in the application of the Town of Westport dated April 19, 1973 and for no other purpose."
The deed further provided, inter alia, that should this condition be breached title to the property "shall, at its option, revert to and become the property of the UNITED STATES OF AMERICA which shall have an immediate right of entry thereon and the Town of Westport . . . shall forfeit all right, title and interest in and to the . . . property. . . ." Accompanying the deed is an abstract of proposed use executed by the former First Selectman of the Town of Westport. Suffice it to say that the proposed windrow composting operation is not within the educational uses to which use of the site is restricted. While the plaintiffs do not explicitly say so, their claim that the town failed to submit "necessary legal documents" appears to be based on the town's failure to submit to the commission a release of the restrictive covenant executed by the United States or evidence that it was reasonably probable that such a release would be forthcoming.
In the absence of a zoning regulation authorizing such action, a zoning authority "may not deny a special permit on the ground that the use will violate a restrictive covenant." 83 Am.Jur.2d, Zoning and Planning, 1006. "The law is well established that restrictive covenants in a deed as to use of CT Page 5753 property are distinct from the provisions of a zoning law and have no influence or part in the administration of a zoning law." Whiting v. Seavey, 159 Me. 61, 68, 188 A.2d 276 (1963); see Johnson v. Guarino, 22 Conn. Sup. 235, 238, 168 A.2d 171
(1960); Suess v. Vogelgesang, 151 Ind. App. 631, 281 N.E.2d 536,541-544 (1972); In re Michener's Appeal, 382 Pa. 401,115 A.2d 367 (1955); Friends of Shawangunk, Inc. v. Knowlton, 64 N.Y.2d 387,487 N.Y.S.2d 543, 476 N.E.2d 988 (1985); 5 Rathkopf's The Law of Zoning and Planning (4th Ed. Ziegler) 57.02 [1, 2]; 3 Anderson, American Law of Zoning 3d 20.77, p. 612, 101A C.J.S., Zoning Land Planning, 239, p. 693; 83 Am.Jur.2d, op. cit.
This case is not within the general rule because44-2.3 of the zoning regulations expressly makes deed restrictions the concern of the commission. Nonetheless, the plaintiffs cannot prevail for two reasons. Firstly, they have failed to show that a release of the deed restriction is a "necessary legal document" The word "necessary" is defined as "absolutely needed: required." Webster's Ninth New Collegiate Dictionary (1991). The plaintiffs have not shown that the commission was bound to find that a release of the deed restriction is "absolutely needed" and "required" for the proper functioning of the composting operation. Secondly, the plaintiffs have not cited any case law or provided the court with any analysis as to the applicability and enforceability of such a deed restriction. In such a circumstance the issue is not sufficiently briefed to be afforded consideration. Gaynor v. Union Trust Co., 216 Conn. 458, 582, 582 A.2d 190 (1990); see also Dorsey v. Mancuso, 23 Conn. App. 629, 632-633, 583 A.2d 646
(1990); Buchetto v. Haggquist, 17 Conn. 808, 559 A.2d 1141
(1989).
 D.
The plaintiffs claim that the applicant failed to comply with 44-2.2 of the zoning regulations. Section 44-2.2 provides:
 The applicant shall EITHER obtain a written report indicating recommendations, preliminary approvals, final approvals or disapprovals from any State or Federal Department Bureau or Agency such as Connecticut Department of Transportation, Connecticut Department of Environmental CT Page 5754 Protection, State Traffic Commission, U.S. Army Corps of Engineers, etc., having jurisdiction over the application or any aspect thereof; OR otherwise provide sufficient [sic] written State or Federal agency approvals appears to have a reasonable probability of success."
The parties do not dispute that a permit was required from the Commissioner of Environmental Protection, pursuant to General Statutes 22a-207 et seq. The town does not dispute that it did not submit a "DEP" permit to the commission and did not provide evidence that such agency approval had a reasonable probability of success.
The defendants first assert that the composting operation is exempted from DEP permit requirements by General Statutes22a-208i. Subsection "a" of that statute provides in relevant part: "Notwithstanding any provision of this chapter, or chapter 446e or 446k, any facility where the sole business or activity conducted is composting of leaves shall be exempt from the requirements of sections 22a-208a and 22a-430." (Emphasis added.) Section 22a-208a requires a permit for the construction or operation of a solid waste facility. The exemption in22a-208i is expressly limited to the "composting of leaves." While the town's application states that the proposed use was "for process of leaves[,] brush and composting thereof," the record reflects that the town intends to use the site for the composting of leaves, grass clippings, brush and "other yard waste." Thus, the proposed use is beyond the ambit of the exemption for leaves in 22-208i. "Absent evidence to the contrary, statutory interpretation indicates that the legislature intended the list to be exclusive." (Internal quotation marks omitted.) Hall Manor Owner's Assn. v. West Haven, 212 Conn. 147, 156, 561 A.2d 1373 (1989).
However, the plaintiffs cannot prevail on this claim. The requirement in 44-2.2 that the applicant submit approvals from other agencies or show that such approval has a reasonable probability of success is prefaced by the provision in 44.2 that "[t]he applicant shall also obtain and submit to the Commission Pursuant to section 43-3.2 such of the following reports and documents as are applicable." (Emphasis added.) Section 43-3.2 provides: "The applicant shall submit any required report or document set forth in section 44-2 at least CT Page 5755 fourteen (14) calendar days prior to the public hearing or Commission review of an application. If any such report or document has not been submitted, the Commission may deny the application." (Emphasis added.) This discriminatory use of "shall" and "may" confirms that the legislating authority intended to distinguish those words according to their ordinary meanings. Shulman v. Zoning Board of Appeals, 154 Conn. 426,428, 429, 226 A.2d 380 (1967). "May" does not mean "must." Manchester Environmental Coalition v. Stockton, 184 Conn. 51,66-67, 441 A.2d 68 (1981). "By employing the word `may' as opposed to the mandatory `shall,' the statute calls upon the [commission's] discretion." In re Cynthia A., 8 Conn. App. 656,663, 514 A.2d 360 (1986). The issue, then, is whether the commission abused its discretion in not denying the town's application in the absence of DEP approval or evidence that such approval was reasonably probable.
The commission granted the town's application subject to the condition that "prior to the issuance of a Zoning Permit . . . [a]ll approvals from the Department of Environmental Protection shall be obtained as required for the operation of the Composting facility. Any revisions in the Proposed Composting Site Map that may be required as part of the DEP approval process shall be submitted to the Planning and Zoning Commission for their [sic] review and approval." The plaintiffs challenge the validity of this condition.
In Stiles v. Town Council, 159 Conn. 212, 221,268 A.2d 395 (1970), the court held that "a change of zone which is dependent for its proper functioning on action by other agencies and over which the zoning commission has no control cannot be sustained unless . . . the necessary action appears to be a probability." However, the following year the court recognized that "the strict application of the rule as stated in Stiles . . . to instances of exceptions and special use permits may often prevent desirable changes where the accomplishment of the change depends on cooperative or dependent action by the zoning authority and other municipal agencies over which it has no control. In such instances it is, of course, desirable, where feasible, that the zoning authority ascertain that there is a reasonable probability that such action will eventuate. In many circumstances, however, other municipal agencies may properly be reluctant to commit themselves to a course of action before knowing that if such a commitment is made it will meet such conditions as the zoning authority deems advisable. Such a CT Page 5756 stalemate is clearly undesirable. Under such circumstances, where cooperative action is necessary to accomplish a desirable result, a stalemate can best be avoided by approval which may be conditional. We would, accordingly, hold that where an exception or a special permit is granted and the grant is otherwise valid except that it is made reasonably conditioned on favorable action by another agency or agencies over which the zoning authority has no control, its issuance will not be held invalid solely because of the existence of any such condition." Lurie v. Planning Zoning Commission, 160 Conn. 295,307, 278 A.2d 799 (1971).
In Baker v. Planning Zoning Commission, 212 Conn. 471,482-83, 562 A.2d 1093 (1989), the court explained that the Lurie "holding was intended to achieve greater flexibility in zoning administration by avoiding stalemates between a zoning authority and other municipal agencies over which it has no control. . . . [T]he phrase `reasonably conditioned' in Lurie contemplates giving the other agency, over which a planning and zoning commission has no control, the opportunity to review the plans, thereby furthering the goal of cooperative action among municipal agencies, and that the record need not indicate whether the [other agency] is likely to approve the . . . plans."
Since this case deals with a special permit rather than with a zone change, it is the rule in Lurie, rather than the rule in Stiles, which controls. That the other agency over which the commission has no control is a state agency rather than a municipal agency is of no moment. The condition imposed by the commission was a reasonable one, recognizing the legitimate jurisdiction of the Commissioner of Environmental Protection over such operations, yet retaining local control over final approval. Under the rule in Lurie, as clarified by Blaker, the commission did not act illegally in conditioning its approval on the issuance of a "DEP" approval prior to the issuance of a zoning permit. Since this valid condition adequately served the purpose of 44-2.2 of the zoning regulations, the commission did not abuse its discretion in not denying the application for lack of DEP approval or a showing that such approval was a reasonable probability.
 E.
Finally, the plaintiffs claim that the commission failed to consider the standards enumerated in 44-6 of the zoning CT Page 5757 regulations.[10] First, the plaintiffs claim that the commission "failed to consider and determine that the proposed composting operation proposed by the Town would not have a significant adverse effect on the historical and archeological portions, if any, on the Subject Property." (Emphasis added.) In the absence of any suggestion that the former use of this site for Nike ballistic missiles is "historical" within the ambit of 44-6(6), the short answer is that the record fails to reflect that any portion of the subject property has archeological or historical significance.
The plaintiffs also claim that the commission "failed to determine whether the composting operation would have a significant adverse effect on adjacent areas located within the close proximity to the use. . . . These adverse implications include: (1) excessive noise produced by commercial chippers that will be placed on the Subject Property, (2) the effect the Town's composting operation will have with regard to the odor produced from leaf mold, the rise of vermin as a result of this mold, and the rise [in the number of] ticks that give Lyme disease[11] to the residents of the area." (Footnotes omitted.)
The quality of the plaintiffs' evidence as to the noise which would be created by the proposed use is diminished because those testifying did not and perhaps could not speak to the particular type of chippers which the town would use on the site. The facts upon which an opinion is based are, at the very least, an important consideration in determining whether an opinion has any value at all; Going v. Pagani, 172 Conn. 29, 34,372 A.2d 516 (1976); Weinstein v. Weinstein, 18 Conn. App. 622,636, 561 A.2d 443 (1989); and, if so, how much value or weight. Zimny v. Cooper-Jarrett, Inc., 8 Conn. App. 407, 430,513 A.2d 1235, cert. denied, 201 Conn. 811, 516 A.2d 887 (1986). More, the evidence on which the plaintiffs' rely was disputed by at least one witness who stated that the chippers which the town would use would not generate excessive noise. See Protect Hamden/North Haven from Excessive Traffic Pollution, Inc. v. Planning Zoning Commission, supra, 543.
The court has given careful consideration to the plaintiffs' claims that odor, vermin and ticks carrying the Lyme disease bacteria will be visited on the composting site and the surrounding area because of the proposed operation. The plaintiffs did present evidence to support some of these claims. However, "[i]n an appeal from the decision of a zoning board, CT Page 5758 we . . . review the record to determine whether there is factual support for the board's decision, not for the contentions of the [appellants]." Pleasant View Farms Development, Inc. v. Zoning Board of Appeals, 218 Conn. 265, 270, 588 A.2d 1372 (1991). There was contrary evidence that any "vermin," such as mice, would be killed by the heat which the composting process generates. The optimum temperature range for composting is between 100 and 140 degrees Fahrenheit. In addition, documentary material in the record states that while there is "some odor potential" when the windrow "pile is first disturbed[,] proper management will reduce or eliminate this potential [which] decreases with pile turning frequency." So, too, adverse effects may be reduced by separation of the composting operation from residences. The recommended distance is 200 to 250 feet. The proposed operation more than satisfies that recommendation. Faced with conflicting evidence, the court cannot substitute the judgment for that of the commission. Horvath v. Zoning Board of Appeals, 163 Conn. 609, 316 A.2d 418
(1972).
Moreover, even assuming that the composting operation will result in odor from a concentration of leaf mold, a rise in vermin and in ticks in the vicinity, the plaintiffs still could not prevail in this proceeding.[12] The regulations only require that the commission "consider . . . whether the proposed use will . . . not have a significant adverse affect on adjacent areas located within close proximity to the use. . . ." (Emphasis added.) Zoning Regs. 44-6(3). If the drafters of these regulations had intended that a special permit be denied where the proposed use would have significant adverse affects on adjacent areas, they could have done so. They did not.
The record reflects that the Department of Environmental Protection has recommended leaf composting as part of a policy of solid waste management. (Record 60.2) The town plan calls for the establishment of a composting. facility within the territorial limits of the town. The commission also had before it the testimony of the chairman of a municipal task force which had been established to address the issue of recycling and composting. That task force had reviewed twenty-one potential sites for a composting operation. Eighteen sites were readily eliminated. of the remaining three sites, the task force presented cogent reasons for recommending the subject property. No one contended that this was an ideal site. CT Page 5759
Section 44-6 of the zoning regulations reposes discretion in the commission with respect to the weight it ascribes to particular criteria in specific cases. "A zoning commission is endowed with liberal discretion in applying the law to the facts of a case . . . and we must be cautious about disturbing commission decisions or review. Gagnon v. Municipal Planning Commission, 10 Conn. App. 54, 56-57, 521 A.2d 589, cert. denied, 203 Conn. 807, 525 A.2d 521 (1987)." Krawski v. Planning Zoning Commission, 21 Conn. App. 667, 671,575 A.2d 1036, cert. denied, 215 Conn. 814, 576 A.2d 543 (1990). The commission here necessarily determined that any possible adverse affect which the composting operation might have on "adjacent areas located within the close proximity to the use" did not outweigh the other criteria relevant to the consideration of a special permit. "Zoning commissions have a wide discretion in determining the local public need and the means of meeting it, because the local authority lives close to the circumstances and conditions which create the problems and shape the solution." Hahn v. Zoning Commission, 162 Conn. 210, 214, 293 A.2d 9
(1972). "If the commission has reasonably and fairly exercised its honest judgment after a full hearing, we must uphold its decision unless unreasonable, arbitrary or illegal." Krawski v. Planning Zoning Commission, supra.
The appeal is dismissed.
LEVIN, J.